Per Curiam :
This case comes before the court* on exceptions of the parties to a recommended decision filed on March 24, 1972, by Trial Commissioner Harry E. Wood *600 pursuant to Rule 134(b). Tbe court bas considered tbe case on tbe briefs and oral argument of plaintiff, pro se, and counsel for defendant. Since tbe court agrees witb tbe trial commissioner’s decision, as hereinafter set forth, it hereby affirms and adopts tbe same as tbe basis for its judgment in this case. Therefore, it is concluded that plaintiff is entitled to recover for tbe basic allowance for quarters of a captain (0-3) without dependents for the period February 1, 1968, to July or August 1968, and judgment is entered accordingly with tbe amount of recovery to be determined pursuant to Rule 131(c). It is further concluded that plaintiff is not entitled to recover a basic allowance for quarters for any period prior to February 1, 1968, and as to such claim tbe petition is dismissed.
OPINION OP COMMISSIONER
Wood, Commissioner:
Plaintiff served on active duty in Korea as a captain (0-3), Judge Advocate General’s Corps, Department of the Air Force, from the latter part of June 1967 to July or August 1968. He claims in this action some $900, representing a portion of the basic allowance for quarters (BAQ) of an officer of his rank without dependents during his Korean service.[1]
Plaintiff’s position is that defendant has breached his “basic Constitutional rights”,[2] as well as statute and regulation. Defendant urges an absence of arbitrary, capricious or unlawful action, and that plaintiff is therefore not entitled to BAQ for the period in question.
For reasons which follow, it is concluded that plaintiff is not entitled to BAQ for any period prior to February 1, 1968, but is entitled to BAQ for the period February 1,1968, to his departure from Osan Air Force Base (Osan AFB).
*601 l
Plaintiff’s permanent duty station from June L967 to July or August 1968 was at Osan AFB, Korea. Finding 1(a). Throughout this period he was assigned to, and occupied, without payment of rental charges, quarters (Boom 205) in Building 896,[3] located on base. Finding 3. Boom 205 (which included a kitchen) contained about 256 square feet of space, exclusive of closet and bath. Finding 4.
To about February 1, 1968, plaintiff occupied Boom 205 alone. Shortly after (and probably as a result of) the Pueblo incident of January 23,1968, however, there was a considerable buildup of military personnel in Korea, and from about February 1,1968, to his departure from Osan AFB, plaintiff shared Boom 205 with two other officers, married with dependents and on temporary duty in Korea, who were either paid BAQ or furnished “in kind” housing for their families at other locations. Findings 5-7.
While the crowding and general inconvenience resulting from the residence of three officers in a single relatively small room is obvious, plaintiff, for some time after February 1, 1968, made no complaint respecting his assignment to quarters in Boom 205. Finding 8(a).
By letter dated March 11, 1968,[4] however, plaintiff noted that bachelor quarters at Osan AFB, not satisfying “desired adequacy Standards” even prior to February 1, 1968, “are presently occupied by an average of three persons * * and requested that the situation be brought to the attention of each commander of an Air Force installation in Korea, in order that where inadequate housing conditions existed, the appropriate commander might “so declare the condition and authorize proper payment of full or partial basic allowance for quarters to bachelor party permanent personnel.” Plain *602 tiff’s request for BAQ was subsequently denied, and this suit followed. Findings 8-9.
II
Plaintiff’s principal Constitutional complaint appears to be that he occupied assigned quarters on base without BAQ, while other officers, married with dependents and on temporary duty in Korea, who shared his quarters following February 1, 1968, were either paid BAQ or furnished “in kind” housing for their families at other locations.
The statute authorizing BAQ obviously does not treat each member of the armed forces in precisely the same way. The member’s rank, and whether or not the member is with, or without, dependents, clearly affect the monthly rate of BAQ to be paid when due. It cannot validly be concluded, however, that in enacting such a scheme Congress has encroached on Constitutionally protected rights.
There are obvious differences in circumstances between a bachelor officer without dependents at his permanent duty station and an officer with dependents on temporary duty away from his permanent station. Those differences fully justify the Congressional decision not to treat the two classes of officers, albeit of the same rank, in absolutely identical fashion insofar as BAQ is concerned. Although both may occupy government quarters at the same military installation, a married officer, separated from his family and away from hi's permanent duty station, has obligations and expenses the single officer at his permanent station does not. No actionable discrimination is shown or apparent.[5]
Ill
Still to be considered, however, is plaintiff’s further contention that, while in Korea, his right under statute and regulation to BAQ (or to “adequate” quarters) was breached.
Pursuant to Section 403(a), Title 31, United States Code (1964), a member of the uniformed services entitled to *603 basic pay is, except as otherwise provided by law, entitled to a basic allowance for quarters. One exception is stated in Section 403(b): such a member assigned government quarters “appropriate to bis grade, rank, or rating and adequate for himself, and his dependents, if with dependents, is not entitled to a basic allowance for quarters.”
As in force throughout the period here material, Section 403, Title IY, Executive Order No. 11157, June 24, 1964, 29 Fed. Keg. 7973, as amended 37 U.S.C. § 301 note (1970), implementing the foregoing statute, provided in part that any government quarters “in fact occupied without payment of rental charges * * * at his permanent station by a member without dependents * * * shall be deemed to have been assigned to such member as appropriate and adequate quarters, and no basic allowance for quarters shall accrue * * [6]
Air Force Regulation (AFR) 30-16, dated December 15, 1965, and Air Force Manual (AFM) 30-7, dated August 1, 1967,[7] superseding AFR 30-16, contained policies and procedures with respect to bachelor quarters. Findings 13, 14. Among other things, AFM 30-7[8] defined “Adequate” and “Inadequate” quarters, “Desired Adequacy Standards”, “Minimum Adequacy Standards”,[9] and “Military Necessity”, and prescribed, for a bachelor permanent party officer of plaintiff’s rank, “Desired Adequacy Standards”[10] of an apartment consisting of an unshared bedroom, living room, bath and kitchenette, with at least 600 square feet of gross living area.
AFM 30-7 also provided that military personnel might voluntarily occupy inadequate quarters; that military necessity might temporarily require the involuntary assignment of personnel to bachelor quarters below prescribed standards; and that bachelor officers occupying such quarters *604 either voluntarily or involuntarily because of military necessity would not be paid BAQ.
IV
Throughout his service in Korea, plaintiff, a bachelor permanent party officer without dependents, was assigned to, and occupied, without payment of rental charges, government quarters. Consideration of his claim is facilitated, however, by separating it into two parts: (1) the period of time plaintiff occupied government quarters alone, and (2) the period he shared such quarters with others.
Plaintiff asserts that, throughout the entire period, AFM 30-7 minimally entitled him to quarters at Osan AFB containing an unshared bedroom, living room, kitchenette and bath, with at least 600 square feet of living area, and that “any lesser facilities are clearly inadequate by definition * * AÍI1 else aside, plaintiff misreads AFM 30-7. Its “Minimum Adequacy Standards” were explicitly made inapplicable to Air Force installations in Korea. And, the prescribed “Desired Adequacy Standards” which were to be met there, conditions permitting, were plainly a goal and not an inflexible minimum requirement giving rise to a valid monetary claim if not fully complied with.
A
With respect to the period ending on or about February 1, 1968, plaintiff has failed to establish any liability on defendant’s part. To, and indeed for several weeks after, that time, he occupied his assigned quarters “without protest or appeal from the assignment made by the commanding officer * * Driver v. United States, 106 Ct. Cl. 821, 825 (1946). Those quarters were validly and properly determined to be adequate ; their failure to meet desired adequacy standards is not determinative. On the facts of this case plaintiff clearly has no right to BAQ for any period during which he was the sole occupant of his assigned quarters. Olson v. United States, 123 Ct. Cl. 141 (1952); Drivers. United States, supra; cf. 40 Comp. Gen. 169 (1960).
*605 B
The balance of plaintiff’s claim involves other, and difficult, questions, and requires a different result.
About February 1, 1968, plaintiff’s sole occupancy of his assigned quarters came to an end. Defendant, noting plaintiff’s failure to protest the changed situation for some weeks, nonetheless treats plaintiff’s claim to BAQ for the period February 1, 1968, to his departure from Osan AFB as an entity, and for present purposes that approach will be accepted. Cf. Olson v. United States, supra; Driver v. United States, supra; 40 Comp. Gen. 169, 171 (1960).[11]
The statute governing BAQ payable to an officer of the armed forces is explicit. While entitled to basic pay, plaintiff was also entitled to BAQ as a matter 'of right, unless barred by a valid exception. Cf. Weed v. United States, 141 Ct. Cl. 200, 203, 147 F. Supp. 948, 949-50 (1958); Petty v. United States, 119 Ct. Cl. 1, 11 (1951). The only statutory bar which is, or could be, suggested here is the assignment to plaintiff of government quarters “appropriate to his grade, rank, or rating and adequate for himself * * 37 U.S.C. § 403 (b) (1964).
In its argument respecting the post-February 1, 1968, portion of plaintiff’s claim, defendant omits any reference to or reliance upon Executive Order No. 11157, supra. Instead, it relies largely upon what it terms “a ‘military necessity’ and a full justification for a determination of adequacy notwithstanding the fact that otherwise, the allocation was far less than prescribed standards.”[12]
Defendant’s position as to the issue presented by this phase of the litigation ignores a significant, if unmentioned, fact: *606 that on March 12, 1968, the classification of the building in which plaintiff’s quarters were located was changed on defendant’s “Real Property Accountable Record-^-Buildings” form from adequate (Usable — Class A, Condition, Code 1) to inadequate (Usable — Class B, Condition, Code 2). Findings 3,14.
While defendant avers that the Vice Commander’s second endorsement to plaintiff’s March 11,1968, letter (finding 11) was a “determination of adequacy”, that document, particularly in the light of the change in classification above alluded to, falls far short of deserving that label. There is certainly no explicit statement that plaintiff’s quarters were suitable or adequate. There is, indeed, a clear, contrary, implication that plaintiff was in fact “residing in quarters which could be deemed unsuitable or inadequate.”
Moreover, the Vice Commander’s reference to a message from the Commander in Chief, Pacific Air Force, is equivocal. That message dealt with (and the Vice Commander knew or should have known that it dealt with) the adequacy of quarters for personnel on temporary duty in Korea, not those, like plaintiff, who were bachelor permanent party members. And, it is in any event clear that from March 12, 1968, to his departure from Osan AFB, plaintiff’s quarters were officially classified as inadequate.
In addition to defining adequate and inadequate quarters, AFM 30-7 declared not only that bachelor officers might voluntarily occupy inadequate quarters, but also that, when dictated by military necessity, bachelor officers might involuntarily “occupy inadequate quarters”, and that, even in the latter event, such personnel would not be “authorized BAQ.”
On the facts proven by this record, the pivotal issue is whether or not plaintiff’s involuntary occupancy of assigned quarters classified as inadequate March 12,1968, and in fact inadequate for the preceding several weeks,[13] somehow deprives him of his statutory right to BAQ unless assigned *607 quarters “appropriate to Ms grade * * * and adequate for himself * *
Thus to define the issue is to resolve it. To the extent AFM 30-7 purports to authorize or justify denial of BAQ to a bachelor permanent party officer involuntarily required to occupy quarters which concededly are not appropriate to Ms grade and adequate for Mmself, it contravenes the Congressional grant, and is invalid. Cf. Weed v. United States, supra; True v. United States, 107 Ct. Cl. 662, 69 F. Supp. 128 (1947). Plaintiff is entitled to recover BAQ for the period commencing February 1,1968, and extending to his departure from Osan AFB, at the rate prescribed by statute for an officer of his rank without dependents.[14]
Necessarily inherent in the statute authorizing BAQ are flexibility and the exercise of discretion. The nature of appropriate and adequate quarters for a bachelor permanent party member overseas, especially in perilous times, can scarcely be viewed as a constant. The exigencies of the military situation, the availability of on-base facilities, the availability and adequacy of off-site housing, and other relevant circumstances are factors a commander might well validly weigh in reaching a decision on the adequacy of quarters vel non. And, the necessity, or lack of it, for on-base residence of military personnel is plainly for the military.
The limited, narrow, conclusion reached herein does not disturb, or even touch, those sound considerations. It is, rather, simply a holding that deprivation of a statutory right to BAQ may not be founded on forced and involuntary occupancy of admittedly inadequate quarters, when Congress has declared that assignment of appropriate and adequate quarters is a prerequisite to cutting off that right.
Findings of Fact
1, (a) Plaintiff, at all times here relevant a bachelor without dependents, served on active duty as an officer of the Judge Advocate General’s Corps, Department of the Air Force, from September 1965 to August 1968. From Septem *608 ber 1965 to June 1967 bis duty station was Stewait Air Force Base (Stewart AFB), Newburgh, New York. From the latter part of June 1967 to July or August 1968, he was assigned to a permanent duty station at Osan Air Force Base (Osan AFB), Republic of Korea. While in Korea, plaintiff was a captain (0-3), and his duty assignment was Assistant Staff Judge Advocate, 6314th Support Wing, United States Air Force. He here claims entitlement to (at least) a portion of the basic allowance for quarters (BAQ) provided by statute for an officer of his rank (0-3), without dependents, during his Korean service.
(b) Plaintiff’s claim apparently is that he was entitled to either 600 square feet of living space or BAQ; that he received neither; and that his monetary recovery should be measured by (a) dividing actual living space furnished to him by defendant by that assertedly due, and (b) multiplying the resulting fraction by the BAQ authorized for an 0-3 without dependents.
(c) By agreement of the parties, trial was limited to the issues of law and fact relating to plaintiff’s right to recover, with determination of the exact amount of recovery, if any, reserved for further proceedings.
2. While stationed at Stewart AFB, plaintiff was permitted to live off base, and he received BAQ.
3. (a) While stationed at Osan AFB, plaintiff was assigned to, and occupied without payment of rental charges, quarters (Room 205) in Building 896, located on base.
(b) Building 896, completed in 1966 at a cost of $195,549, and of semi-permanent construction, was a two-story (plus basement), 40' x 217', building with concrete floors and concrete block walls. It contained some 48 “studios” or rooms.
(c) To March 12, 1968, Building 896 was carried on defendant’s “Real Property Accountable Record — Buildings” form as in “USABLE — Class A”, Condition, Code 1; on March 12, 1968, the “condition code nomenclature” was changed to “USABLE — CLASS B”, Code 2.[1] The latter classification thereafter remained in force at all times here *609 material. The basis for the change does not appear in the record.
4. The overall dimensions of Room 205 were approximately 19' x 17', or 323 square feet. A kitchen, bath, and closet were included. Exclusive of closet and bath, Room 205 contained approximately 256 square feet of space.
5. On January 23, 1968, the USS Pueblo and its crew were seized in the Sea of Japan by North Korean patrol boats and taken prisoner to Wonsan, North Korea.[2] About February 1, 1968, and probably as a result of that incident, a considerable number of military personnel were moved into South Korea.
6. To about February 1, 1968, plaintiff occupied Room 205 alone. From about February 1, 1968, to his departure from Osan AFB, plaintiff shared Room 205 with two other officers, married with dependents and on temporary duty at Osan AFB. Plaintiff did not receive BAQ while at Osan AFB. The two married officers who shared Room 205 with him during the period February-August 1968 were either paid BAQ or furnished “in kind” housing for their families at other locations.
7. On February 3,1968, the Commander in Chief, Pacific Air Force, directed that:
* * * All bases in South Korea will insure the availability of government furnished quarters * * * for all TDY personnel. Tentage will be considered as adequate quarters. If it becomes necessary for any personnel to be housed off-base, such off-base facilities will be leased by 5AF Civil Engineer or procured through service, contracts by local base procurement offices and furnished the individual as government quarters.
8. (a) To March 11, 1968, plaintiff made no complaint respecting his assignment to quarters in Room 205, Building 896.
(b) On March 11, 1968, plaintiff addressed a letter, captioned “Inadequate Housing Facilities at Osan Air Base and Other USAF Facilities in R.O.K.”, to the Chief, Services Division, Osan AFB. Plaintiff alluded to paragraph 13, Air *610 Force Manual (AFM) 30-7 (finding 14); stated that bachelor permanent party officers assigned to Osan AFB had never been afforded quarters approaching desired adequacy Standards contained in the said paragraph, and that existing facilities “are presently occupied by an average of three persons thereby cutting the per capita housing available to approximately 80 square feet”; asserted inequity between “bachelor and married standards”, in that married officers had “adequate facilities or basic quarters allowances provided for their families in addition to being provided the Osan facilities, inadequate as they are, free of charge * * cited Section 30212, Department of Defense Military Pay and Allowances Entitlements Manual, “Basic Allowance for Quarters (BAQ) ” (finding 11); and requested that “the above matter be submitted to the Base Commanders at Osan Air Base and other USAF installations in the B.O.K. in order that where inadequate housing conditions exist he can so declare the condition and authorize proper payment of full or partial basic allowance for quarters to bachelor party permanent personnel.”
(c) By first endorsement, dated March 29,1968, to plaintiff’s letter of March 11, 1968, the Assistant Chief, Services Division, advised the Base Commander, Osan AFB, that prior to “the buildup” at Osan AFB all bachelor officers had been given priority 'on assignment to quarters in Building 896; that although such quarters did not “completely meet the minimum adequacy standards as established, there could be no question as to their ‘adequacy’ prior to the buildup * * that the Base Commander had authority to determine “the adequacy of existing bachelor quarters * * *’’; that the message quoted in finding 7 related only to “TDY personnel in Korea under Combat Fox” and thus did not abridge the Base Commander’s authority with respect to bachelor permanent party officers; and that, in view of “the present overcrowded conditions in building 896, it does seem that a partial payment of BAQ to the bachelor [permanent party] officers living there and in the other buildings on base which are definitely inadequate would be in line with AFM 30-7.”
*611 (d) By second endorsement, dated April 13, 1968, to plaintiff’s letter of March 11, 1968, the Vice Commander, Osan ABB, advised plaintiff that:
1. * * * no provisions in the pay manual * * * authorize officers a partial BAQ while utilizing unsuitable or inadequate quarters. * * *
2. A bachelor officer may be authorized BAQ when not residing in government quarters. In such instances, BAQ is then used to secure adequate quarters in the local community. However, adequacy of quarters in the local community must be considered before BAQ is authorized.
3. * * * BAQ payment cannot be authorized for bachelor officers residing in quarters which could be deemed unsuitable or inadequate. PACAF message received early in Combat Fox Operation declared all quarters, including tents, adequate.
9„ On April 18, 1968, plaintiff submitted his letter of March 11, 1968, with endorsements (finding 8) to the Air Force Accounting and Finance Center, Denver, Colorado, for “consideration and reply.” On May 9, 1968, the claim was forwarded by that Center to Headquarters, United States Air Force. By letter dated May 24, 1968, to plaintiff, the Chief, Policy Division, Directorate of Personnel Planning, “DCS/P”, United States Air Force, denied plaintiff’s “appeal”, stating in part that:
* * * Air Force minimum standards of adequacy for bachelor housing are not applicable in oversea areas * * * They are, however, used as guides * * * to the extent possible. When Government quarters are not available for assignment, bachelor officers may be authorized to reside off-base and receive [BAQ] * * * provided * * * adequate community support housing is available. The latter criterion is not met at Osan. The accommodations are considered inadequate and existing health and sanitation practices are far below acceptable norms. These facts dictate that all Osan personnel use on-base accommodations unless peculiar circumstances warrant otherwise * * * there is no provision of law which would enable the commander to declare bachelor quarters inadequate, allow occupants to receive their BAQ, and permit them to remain in the quarters for some “fair” rental charge. * * * bachelor accommodations cannot *612 be declared substandard (or “inadequate”) under existing statutes, and when occupied, they are considered to be adequate and suitable insofar as entitlement to * * * [BAQ] is concerned.
10. (a) Pursuant to 37 U.S.C. § 403 (1964), in effect without substantive change throughout the period here material,
(a) Except as otherwise provided by this section or by another law, a member of a uniformed service who is entitled to basic pay is entitled to a basic allowance for quarters at * * * [a rate prescribed] according to the pay grade in which he is assigned * * * for basic pay purposes * * *
(b) * * * a member of a uniformed service who is assigned to quarters of the United States or a housing facility under the jurisdiction of a uniformed service, appropriate to his grade, rank, or rating and adequate for himself, * * * is not entitled to a basic allowance for quarters. * * *
(b) Executive Order No. 11157, June 24, 1964, 29 Fed. Keg. 7973, as amended 37 U.S.C. § 301 note (1970)[3] as in effect throughout the period here material, provided in part that:
Sec. 403. Any quarters or housing facilities under the jurisdiction of any of the uniformed services in fact occupied without payment of rental charges * * * at his permanent station by a member without dependents * * * shall be deemed to have been assigned to such member as appropriate and adequate quarters, and no basic allowance for quarters shall accrue.
% Hi sjs ♦
Sec. 407. The Secretaries concerned * * * with respect to personnel of the unif ormed services within their respective departments, are hereby authorized to prescribe such supplementary regulations not inconsistent herewith as they may deem necessary or desirable for carrying out these regulations * * *.
11. Chapter 2, “BASIC ALLOWANCE FOK QUAK-TERS (BAQ)”, Department of Defense Pay and Allowances Entitlements Manual (DOD Pay Manual) as in effect throughout the period here material, provided in part as follows:
*613 Section B — Members Without Dependents
30211. Entitlements
Members without dependents who are entitled to basic pay are entitled to BAQ * * * under conditions contained in Table 3-2-3.[4]
30212. GOVERNMENT QUARTERS — RESPONSIBILITY EOR ASSIGNMENT or Termination oe Assignment
The base * * * commander assigns and terminates quarters. He also determines when quarters are “adequate” or “suitable” for assignment. Government quarters * * * will be considered as assigned, suitable, and adequate whenever occupied by a member at his permanent station without payment of rental charges. This applies also to quarters furnished a member without charge:
t- * * * *
c. When jointly assigned to one or more single members.
12. Department of Defense Instruction 4165.47, April 6, 1967 (effective “not later than July 1, 1967”), contained “Minimum Standards of Adequacy for Occupancy of Bachelor Housing”, applicable in the United States and at “such permanent overseas installations as may be designated by the Secretaries of the Military Departments * * * or their designees”. It is reasonable to conclude from the record that this instruction did not apply to Osan AFB, Korea.
13. Air Force Regulation (AFR) 30-16, dated December 15, 1965, contained policies and procedures with respect to officer quarters. Briefly, it placed on the Base Commander responsibility for achieving adequacy in officer quarters “as stated herein”, and for deciding whether “adequate quarters are available.” It also contained minimum adequacy standards applicable within the United States and three listed overseas areas (not including Korea) and desired adequacy standards applicable generally.[5] With respect to overseas *614 areas not listed, it provided that “Square footage per person and number of persons to a room are determined locally.”
14. AFM 30-7, dated August 1, 1967, and in effect thereafter throughout all or most of the period here material,[6] contained policies and procedures with respect to bachelor quarters. AFM 30-7 provided in part as follows:
1. Terms Explained:
a. Adequate Quarters. Officer quarters * * * that:
ill Are classified as “Usable — Class A” * * * and
(2) Meet the minimum standards of adequacy for occupancy established in this manual. These quarters will be carried as Condition Code 1 (Usable — Class A) on the real property records.
*****
j. Desired Adequacy Standards. Standards which are not mandatory, but which are the objectives for officials at all echelons.
*****
n. Inadequate Quarters. Bachelor housing facilities classified as:
(1) “Usable — Class B” * * *
These quarters will be carried as Condition Code 2 * * * (Usable — Class B * * *) * * * on the real property records.
o. Military Necessity. A circumstance or group of circumstances involving personnel availability which, in the commander’s opinion, has a direct bearing on accomplishing the assigned mission.
p. Minimum Adequacy Standards. Standards for which authority exists and which are mandatory in application, unless exceptions are otherwise covered in this manual.
Hfi * * #
3. Responsibilities:
*****
c. Installation Commander. Each commander * * * will:
$ * $ ‡ ‡
(2) Assign officer quarters * * * to personnel assigned to * * * the installation * * *
*****
*615 (4) Determine who is required to live on-base due to military necessity.
(5) Make tbe final determination regarding adequacy of existing bachelor quarters as pertains to common and minimum adequacy standards * * *.
(6) Authorize BAQ * * * when adequate Government quarters are not available but housing is available in the local community.
*****
12. Minimum Adequacy Standards. The minimum adequacy standards apply * * * in the 50 States, District of Columbia, Guam, and Puerto Eico.
a. Officers * * *.
(1) Bachelor Permanent Party and POS Student Officers. (Grades 0-3 and Above) * * *. An apartment consisting of unshared living room, bedroom, and bath, with access to a kitchen/kitchenette * * *
$ $ $ $ $
13. Desired Adequacy Standards. When conditions permit, the following desired adequacy standards will apply both within the 50' States and overseas:
a. Officers * * *.
(1) Bachelor Permanent Party and PCS Student Officers (Grades 0-3 and Above) * * *. An apartment consisting of an unshared bedroom, living room, bath, and kitchenette, with at least 600 square feet of gross living area.
*****
18. Assignment Impartiality:
# * ❖ „ * *
c. Personnel may voluntarily occupy inadequate quarters (involuntarily * * * when military necessity dictates). When such quarters are occupied either voluntarily or involuntarily, bachelor personnel will not be issued certificates of nonavailability of quarters nor authorized BAQ.
19. Assignment of Bachelor Quarters:
* * * * *
g. Military necessity may temporarily require the involuntary assignment of personnel to bachelor quarters below the standards prescribed by this manual. Bachelor military personnel occupying such quarters (either voluntarily or involuntarily) because of military necessity, will not be authorized payment of BAQ.
*616 21. Authority To Live Off Base and Receive BAQ. When adequate bachelor quarters are not available, officers * * * will be authorized to live off base and receive B AQ, provided that:
a. The installation commander has determined that the person is not required to live on the installation as a result of military necessity.
b. The individual desires to live off base.
c. Community support housing is available.
15. Department of Defense Fact Sheet 48 (1967) states in part that:
Salary, or regular military compensation, includes your basic pay, quarters and subsistence (whether in kind or as cash allowances), and the tax break you get by not having to pay income tax on the quarters and subsistence parts of your salary.
ConclttsioN on Law
Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to judgment for the basic allowance for quarters of a captain (0-3) without dependents for the period February 1, 1968, to July or August 1968, with the amount of recovery to be determined in further proceedings pursuant to Rule 131(c). The court further concludes as a matter of law that plaintiff is not entitled to recover a basic allowance for quarters for any period prior to February 1,1968, and as to such claim the petition is dismissed.

 Plaintiff’s motion (See pages 10 and 1-3 of exceptions and brief filed October 16, 1972) that this case be denominated as a class action Is hereby denied.

 See finding 1(b).

 Enumerated as “rights” “to be free of contract interference”, “not to be deprived of * * * property without due process of law”, “to be safe in his ‘home’ from the quartering of troops therein without just compensation”, and “not to be discriminated against due to rank or military status in non-military matters concerning plaintiff’s contract of employment with * * *” defendant. Plaintiff’s brief, pp. 11-12.

 Building 896, completed in 1966, -was a two-story (plus basement) building with concrete floors and concrete walls, and contained some 48 rooms. Finding 3(b).

 The said letter was captioned “Inadequate Housing Facilities at Osan Air Base and Other USAF Facilities in K.O.K.”, and directed to a subordinate of the Osan AFB Commander.

 While plaintiff also alleges several other deprivations of his Constitutional “rights”, those allegations are so clearly lacking In substantiality as to require no discussion.

 Section 30212, Chapter 2, Department of Defense Pay and Allowances Entitlements Manual, contains essentially Identical language. Finding 11. Cf. 40 Comp. Gen. 169, 171 (1960).

 The record suggests that AFM 30 — 7, dated August 1, 1967, was Itself superseded by a July 1, 1968, edition (not in evidence).

 For present purposes, this manual, more comprehensive (and specific) than AFR 30-16, may be assumed to have been In effect at all times here material.

 Such standards did not apply In Korea.

 Such standards did apply In Korea, when “conditions permit * *

 Defendant’s argument, hereinafter set forth, amounts to tacit concession that plaintiff did not voluntarily occupy Room 205 following February 1, 1908.

 Defendant’s brief, p. 8. The “any quarters” portion of a predecessor of Executive Order No. 11157, identical insofar as here relevant with the latter, has been interpreted to mean only “quarters which are voluntarily occupied.” 40 Comp. Gen. 169, 171 (1960). After stating that one who voluntarily occupied inadequate quarters should not later be permitted to urge inadequacy as a basis for payment of BAQ, the Comptroller General concluded that the “same considerations do not apply where a member is forced to occupy ‘quarters’ against his will * * Ibid.

 The precise reason for the change in classification does not appear; the only reasonable inference from this record is that the change was due to multiple occupancy of what were supposed to be unshared quarters.

 Whether defendant la entitled to a deduction based on rental value of the quarters occupied by plaintiff is not now reached.

 See finding 14.

 World Almanac and Boot of Facts, 1969, p. 67.

 Section 403 was amended in 1970 i)y deletion of “at his permanent station.” Executive Order No. 11511, February 28,1970, 35 Fed. Reg. 3877.

 Table 3-2-3 provided in part that, for a member assigned to a permanent station, BAQ accrued “if Government quarters * * * are not assigned”, but did not accrue “if member is assigned or occupies Government quarters suitable and adequate for his grade.”

 The desired adequacy standard for a bachelor officer was “private quarters to include a bedroom, living room, kitchen-dining area, and bathroom.”

 The recora suggests that this edition of AKM 30-7 was superseded effective July 1,1968, but contains no later one.