Kerry P. DAY, Rhett G. Campbell, Richard D. Hugg, Peter H. Luke, Paul M. Scott, James A. Therhune on behalf of themselves and all others similarly situated

v.

UNITED STATES of America and Department of the Air Force.

Civ. A. No. 4–76–21.

United States District Court,
N. D. Texas,
Fort Worth Division.

Nov. 17, 1977.

Kenneth M. Morris, Houston, Tex., Richard L. Bourland, Fort Worth, Tex., Local Counsel, for plaintiff.

Robert M. Hollis, Civ. Div., Dept. of Justice, Washington, D. C., William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., for defendant.

## MEMORANDUM AND ORDER

MAHON, District Judge.

Plaintiff brought this suit against the government to recover Basic Allowance for Quarters (hereinafter BAQ) pursuant to 37 U.S.C. § 403. There being no genuine issues of fact, both parties moved for summary judgment. Jurisdiction is present under 28 U.S.C. § 1346(a)(2).

Plaintiffs represent the class of all unmarried officers without dependents who, while serving in the Air Force, were permanently stationed in Thailand during some portion of the period from January 27, 1970 through January 26, 1976 and who were assigned to quarters of the United States or housing facilities under the jurisdiction of the Department of the Air Force. They assert that they are entitled to recover BAQ payments as provided by 37 U.S.C. § 403 for the period during which they were permanently assigned to Thailand. 37 U.S.C. § 403 in relevant part provides:

> (a) Except as otherwise provided by law, a member of a uniformed service who is entitled to basic pay is entitled to a basic allowance for quarters at the monthly rates prescribed in accordance with § 1009 of this title, according to the pay grade in which he is assigned or distributed for basic pay purposes.

(b) Except as otherwise provided by law, a member of a uniformed service who is assigned to quarters of the United States or a housing facility under the jurisdiction of a uniformed service, appropriate to his grade, rank, or rating and adequate for himself, and his dependents, if with dependents, is not entitled to a basic allowance for quarters. However, except as provided by regulations prescribed under subsection (j) of this section, a commissioned officer without dependents who is in a pay grade above pay grade 0–3 and who is assigned to quarters of the United States or a housing facility under the jurisdiction of a uniformed service, appropriate to his grade or rank and adequate for himself, may elect not to occupy those quarters and instead to receive the basic allowance for quarters prescribed for his pay grade by this section.

\* \* \* \* \* \*

(j) The President may prescribe regulations for the administration of this section, including definitions of the words "field duty" and "sea duty." [1]

It is Plaintiffs' contention that the quarters they received in Thailand were not "appropriate to [their] grade, rank or rating and adequate for [themselves]." Therefore, the Plaintiffs argue, since they are not within the exclusion of 37 U.S.C. § 403(b), they were entitled to BAQ payments under 37 U.S.C. § 403(a). The aggregate payments are estimated to be in excess of twenty million dollars ($20,000,000.00).

## I.

■ The Government's first argument in support of its motion for summary judgment is that Plaintiffs' quarters were adequate as a matter of law because of Executive Order No. 11157 § 403,[2] issued pursuant to 37 U.S.C. § 403(j). It is stipulated that all of the Plaintiff class lived in government facilities and that none paid any rent.

Plaintiffs contend that the Executive Order is not controlling in that it is inconsistent with the statute. The effect of the Executive Order No. 11157 is clearly to read the phrase "appropriate to his grade, rank, or rating and adequate for himself" out of the statute. Under the Executive Order, *any* quarters provided by the government are by definition adequate. This could hardly be what Congress intended when they enacted 37 U.S.C. § 403. The President was given the power in 37 U.S.C. § 403(j) (formerly (g)) to prescribe regulations for the administration of § 403. Such a delegation did not, however, give him the right to emasculate a portion of the Congressional mandate.

In *United States v. Symonds*, 120 U.S. 46, 7 S.Ct. 411, 30 L.Ed. 557 (1886) the Secretary of the Navy issued an order that certain ships were not to be considered in commission for sea duty. The effect of that order was to reduce Symond's pay to "shore service" level rather than "sea duty."

But Congress certainly did not intend to confer authority upon the Secretary of the Navy to diminish an officer's compensation, as established by law, by declaring that to be shore service which was, in fact, sea service, or to increase his compensation by declaring that to be sea service which was, in fact, shore service. The authority of the Secretary to enter orders, regulations, and instructions, with the approval of the President, in reference to matters connected with the naval

---

1. The statute did not remain constant throughout the period of this suit—January 27, 1970 to January 26, 1976. From January 27, 1970 to 1974, subsection (a) contained a table of BAQ payments. Also, prior to 1973, subsection (j) was designated subsection (g). None of these changes affect the merits of the summary judgment motions.

2. Executive Order No. 11157 § 403 (1964):

"Any quarters or housing facilities under the jurisdiction of any of the uniformed services in fact occupied without payments of rental charges . . . (b) at his permanent station by a member without dependents . . . shall be deemed to have been assigned to such *member as appropriate and adequate* quarters, and no basic allowance for quarters shall accrue to such members under such circumstances."

establishment, is subject to the condition, necessarily implied, that they must be consistent with the statutes which have been enacted by Congress in reference to the navy. He may, with the approval of the President, establish regulations in execution of, or supplementary to, but not in conflict with, the statutes defining his powers or conferring rights upon others. The contrary has never been held by this court.

*Id.* at 49, 7 S.Ct. at 412.

The President's power to administer the BAQ statute is derived solely from that act and must, therefore, be consistent with the intent of Congress. Any Executive Order in conflict with the statute, as this one is, cannot be controlling. *See Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936); *Real v. Simon,* 510 F.2d 557 (5th Cir. 1973). Therefore, the Government's first argument in support of its motion for summary judgment must be rejected.

## II.

■ In their cross-motion for summary judgment, Plaintiffs argue that the Air Force, on its own form 1430,[3] has itself defined Plaintiffs' quarters, as well as 98.1%[4] of the buildings used to house officers in Thailand, as inadequate. Plaintiffs rely on *Lischak v. United States,* 202 Ct.Cl. 598 (1974) for the proposition that an Air Force determination in the real estate records that a building is inadequate controls BAQ entitlements.

Plaintiffs' reliance is misplaced. During 1968, the time involved in the *Lischak* case, Air Force Manual 30–7 (hereinafter AFM 30–7), implementing 37 U.S.C. § 403, defined adequate quarters as those that are

classified "Usable—Class A" and that meet the minimum standards of adequacy to be classified as Condition Code 1 on the real property records.[5] Clearly the real estate records were meant to define adequacy for the purposes of BAQ. Since the Air Force had classified Lischak's quarters "Usable—Class B," under the applicable regulation this meant those quarters had been defined by the Secretary as inadequate, and under the statute Lischak was thereby entitled to BAQ. *Lischak,* at 606–7.

Since the *Lischak* case, AFM 30–7 has been rewritten. No longer is adequacy for BAQ purposes tied to the real estate records. This clearly distinguishes the *Lischak* case. Throughout the period involved in this suit AFM 30–7 (and later Air Force Regulation 30–7) defined adequacy for BAQ purposes in terms of square feet of living space. Plaintiffs, in their brief in support of their motion for summary judgment concede that AFM 30–7 and AFR 30–7 standards are applicable and controlling. (Plaintiffs' brief at 29.) While Form 1430 real estate records still exist, they are no longer tied into 37 U.S.C. § 403 by regulation. As shown by the affidavit of Major General William Gilbert, Form 1430 represents an assessment by the Air Force of a building's structural adequacy from an engineering standpoint. Unlike *Lischak,* at no time during the Plaintiffs' overseas service has there been any regulation in force that links Form 1430 and BAQ. The Court is, therefore, of the opinion that a determination of structural inadequacy in real property records is not an official decision that quarters are inadequate for BAQ purposes.

## III.

■ In support of its alternative motion, the Government asks this Court to

---

**3.** Forms 1430 are the Air Force real property records. Each building designated as officers' quarters was classified as to its condition on a Form 1430. The classes were as follows: (1) Usable—Class A (Adequate); (2) Usable—Class B (Substandard); (3) Forced Use (Substandard); (4) Sterile; and (5) Unusable.

**4.** The records on file show that 98.1% of the buildings designated for use as officers' quarters in Thailand during the applicable period were classified as substandard or worse on the Form 1430 real property records.

**5.** *Lischak v. U. S.,* 202 Ct.Cl. 598, 614 (1974), Finding 14.

grant summary judgment as to all the members of Plaintiff class who had at least 110 square feet of net living area (excluding bathing and toilet facilities).

After Congress delegated the authority to administer 37 U.S.C. § 403 to the President in § 403(j) (formerly § 403(g)), the President, in Executive Order No. 11157 § 407 (1964), in turn redelegated the authority to the Secretary of Defense and the Secretaries of the various services. Pursuant to this directive the Secretary of Defense promulgated Department of Defense Instruction No. 4165.47, a series of regulations which defined the minimum standards for adequacy in bachelor officers housing. These Department of Defense regulations provided that the minimum standards for adequacy of bachelor housing were to apply worldwide "unless specific exceptions are made by the Head of the DoD [Department of Defense] Component concerned." The Air Force issued Air Force Manual 30–7 (AFM 30–7) on January 1, 1970 to carry out the Department of Defense Instruction 4165.47. AFM 30–7 was superseded by Air Force Regulation 30–7 (AFR 30–7) on May 12, 1975. Both AFR 30–7 and AFM 30–7 required that officers at a grade level of 0–1 or 0–2 were to receive 250 square feet of living space while 0–3 officers and above were to get 400 square feet consisting of a bedroom, living room, bath and kitchen. These are the same minimum standards set by the DoD Instruction 4165.47 of May 12, 1972.

In accordance with the proviso for specific exceptions contained in the DoD Instruction, the Secretary of the Air Force in paragraphs 2–2 of AFM 30–7 and AFR 30–7 stated that with respect to the minimum standards of adequacy set forth by those regulations: "Oversea major commands may make appropriate reductions in these standards for areas involved in combat or contingency operations or areas directly supporting these operations."

Pursuant to this delegation of authority, the Headquarters for the Pacific Air Forces (hereinafter PACAF) as a major overseas command issued a series of supplementary regulations to AFM 30–7 and AFR 30–7 between April 17, 1969 and September 16, 1975. These PACAF Supplements established a minimum adequacy standard in Thailand of 110 square feet per single officer exclusive of bathing and toilet facilities.[6] On September 16, 1975 the last PACAF Supplement was issued which waived all minimum standards for housing officers permanently stationed in Thailand. This was, apparently, done as a result of the imminent discontinuance of American use of Royal Thai Air Force bases.

The chain of delegated authority went from Congress to the President to the Department of Defense to the Air Force and finally to the Headquarters for the Pacific Air Force. The PACAF thereupon determined that, in Thailand, bachelor officers' quarters comprising 110 square feet per person would be considered "appropriate to [the officer's] grade, rank, or rating and adequate for himself" within the meaning of 37 U.S.C. § 403(b). Unlike Executive Order No. 11157, the Air Force regulations defining "adequacy" are not inconsistent with the Congressional mandate in 37 U.S.C. § 403. They are, therefore, entitled to great weight. *Billings v. Truesdell, Kansas*, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1944); *United States v. Public Utilities Commission of Cal.*, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020 (1953).

Plaintiffs do not quarrel with the right of the Air Force to prescribe the definition of adequate housing found in AFM 30–7 and AFR 30–7 (400 square feet for 0–3 officers

---

**6.** It may be noted that throughout the long history of BAQ payments "adequacy" has always been defined in terms of pure objective standards such as the number of rooms (*See* regulations of 1813 through 1922 quoted in *Jones v. United States*, 60 Ct.Cl. 552, 555–562 (1925), *See also Hollister v. United States*, 92 Ct.Cl. 137 (1940)), or square footage available per officer (*See* AFM 30–7 and AFR 30–7; *Lischak v. United States*, 202 Ct.Cl. 598 (1973)). In no military regulation or federal case was quarters deemed inadequate solely on the basis of some subjective standard such as condition of the quarters, construction type, furnishings provided, etc.

and above and 250 square feet for 0–1 and 0–2 officers). Their complaint is that paragraphs 2–2 of AFM 30–7 and AFR 30–7 are invalid to the extent that they purport to engraft geographical or military exceptions to the 400 and 250 square foot minimum requirements for adequacy of quarters. The question comes down to whether the provision in DoD Instruction 4165.47 for reduction of minimum standards for "areas involved in combat or contingency operations or areas directly supporting these operations" is valid. If it is, then the reduction by PACAF to 110 square feet per officer and finally the waiver of all minimum adequacy standards after September 16, 1975 are also valid. The movement and housing of troops is strictly a military matter so long as the Constitution or federal law is not violated. The decision whether to construct permanent housing for military personnel is one that depends on the particular circumstances involved. It would be unrealistic to require worldwide uniformity in housing regardless of the circumstances or conditions. Decisions such as the size of officers' quarters in a combat or support area is the type of decision that should be left to the military, not the Federal Courts.

The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

In *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1972), the Supreme Court said:

It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not—to the electoral process. Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches.

*Id.* at 10, 93 S.Ct. at 2446.

The Headquarters for the Pacific Air Force under its authority delegated through channels from the President, has defined adequate quarters for 37 U.S.C. § 403. Geographical exceptions based on military necessities are neither unreasonable nor arbitrary. The Air Force has the right to reduce standards of housing for personnel in troubled areas. The 110 square feet minimum standard in Thailand promulgated by the PACAF is a valid regulation and controlling this case. Under Plaintiffs' interpretation the military's hands would be tied. Either massive housing projects would have to precede any American military presence or millions of dollars in BAQ payments would be the price of quick action. This Court is unwilling to impose such a burden on the military. Accordingly, the Government's motion for summary judgment must be granted as to all members of Plaintiff class who received 110 square feet or more per officer while in Thailand between January 27, 1970 and September 16, 1975.

The Court is also of the opinion that military necessity may sometimes dictate the suspension of all minimum standards of adequacy as was done in Thailand on September 16, 1975. All claims for BAQ payments based on service in Thailand after that date must, therefore, also be dismissed.

IV.

As the Government points out, it is unclear whether any of the Plaintiff class every received less than 110 square feet. It is possible that granting the Government's partial summary judgment will obviate any consideration of Plaintiffs' cross-motion for summary judgment. The Court feels that it must, therefore, refrain from ruling on the Plaintiffs' motion until it is convinced that some members of the Plaintiff class

remain in the case. A hearing must be held at a later date during which any member of the class may attempt to show that he is not within the subclass of dismissed Plaintiffs.

It is, therefore, ORDERED that the Government's Motion for Summary Judgment as to the subclass of Plaintiffs who received 110 square feet or more be, and hereby is, granted.

It is further ORDERED that summary judgment be, and hereby is, granted against all claims based on service in Thailand after September 16, 1975.

It is further ORDERED that Plaintiffs' cross-motion for summary judgment be neither granted nor denied pending a later hearing on the remaining members of the Plaintiff class.

Judgment will be entered accordingly.