**Robert G. SPENCER, Petitioner-Appellant,**

v.

**Hon. Melvin LAIRD, Secretary of Defense, et al., Respondents-Appellees.**

**No. 827, Docket 71–1106.**

United States Court of Appeals, Second Circuit.

Argued March 11, 1971.

Decided May 19, 1971.

Steven J. Hyman, New York City (Kunstler, Kunstler & Hyman, New York City, on the brief), for petitioner-appellant.

Carl I. Stewart, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., E. D. N. Y.; David G. Trager, Asst. U. S. Atty., on the brief), for respondents-appellees.

Before HAYS and FEINBERG, Circuit Judges, and CURTIN, District Judge.*

FEINBERG, Circuit Judge:

The narrow issue in this case is when the United States Army must process an application for discharge as a conscientious objector filed by a physician in the inactive reserve. According to petitioner Robert G. Spencer, the Army must act upon such an application before he enters upon active duty. Respondents, who are the Secretary of Defense, the Secretary of the Army, and petitioner's commanding officers, maintain that action can be deferred until after petitioner takes active status. Dr. Spencer appeals from a ruling of the United States District Court for the Eastern District of New York, Anthony J. Travia, J., which agreed with respondents. Affirmance of the district court is required by the opinion of the Supreme Court in Ehlert v. United States, 402 U. S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), which was decided after this case was argued on appeal.

### I.

When Dr. Spencer graduated from medical school in 1966, he accepted a commission in the United States Army Reserve under the "Berry Plan," which permits deferment of active duty until a physician completes residency. In September 1970,[1] orders were issued to appellant notifying him to report for active duty in January 1971. About a month before the latter date, Dr. Spencer applied for discharge as a conscientious

---

* Of the Western District of New York, sitting by designation.

1. Appellant claims that the orders were not actually received until late October.

objector. The application contained appellant's reasons why, as a matter of conscience and belief, he felt he could not participate in war. On January 4, 1971, two weeks before appellant's reporting date, his application was returned to him because

> Department of the Army policy provides that applications received after the normal suspense time required to process them will be processed under the provisions of AR 635–20 upon arrival at your initial duty station. No provisions exist whereby active duty orders may be revoked due to late submission of a request for classification as a conscientious objector.

Eleven days later, appellant petitioned the district court for a writ in the nature of mandamus. A hearing was held before Judge Travia on January 27, devoted only to legal issues. There was no affidavit in opposition to appellant's papers and no evidence was taken. On this record we must, therefore, assume that Dr. Spencer's claim of conscientious objection to war is sufficient to require serious consideration by the Army. Appellant's basic argument before Judge Travia was that the Army had to rule upon his application before he assumed active status. The judge denied the petition, but stayed respondents from acting pending appeal. At oral argument in this court, we extended the stay.

 Since no issue is raised as to our jurisdiction, we will not dwell upon that question extensively, although it is hornbook law that we should not ignore it. Dr. Spencer raises various statutory and constitutional questions in his suit, relying, *inter alia,* on 28 U.S. §§ 1331, 1332, 1361, 1391, 2255. This court has held a number of times that despite the traditional judicial reluctance to interfere with the military, the district court has the power—indeed the duty—to determine whether the armed services are following applicable regulations and

statutes. Nixon v. Secretary of the Navy, 422 F.2d 934, 937 (2d Cir. 1970); Smith v. Resor, 406 F.2d 141, 145–147 (2d Cir. 1969); United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); United States ex rel. Mankiewicz v. Ray, 399 F.2d 900 (2d Cir. 1968); Hammond v. Lenfest, 398 F.2d 705, 715 (2d Cir. 1968). As will be seen below, in this case that will suffice.

## II.

The stated basis for the Army's refusal to process Dr. Spencer's application was that it was received "after the normal suspense time required to process" such applications.[2] That reference was to a 90-day period specified in paragraph 8a of Army Regulation No. 135–25, entitled Army National Guard and Army Reserve, Disposition of Conscientious Objectors:

> *Assignment.* \* \* \*
>
> *a.* Normally a minimum period of 90 days is required to finalize the processing of an application submitted in accordance with this regulation. The submission of an application for discharge by reason of conscientious objection subsequent to the date the individual's orders are published announcing reporting date for active duty or active duty for training is *not* a basis for delay in reporting for designated duty. In the event an individual is ordered to report to active duty or active duty for training while a request for discharge under this regulation is being processed, and the individual is advised that final action cannot be made prior to his reporting date for duty, the individual will be required to comply with his orders. In such instance, his application will be forwarded to the appropriate Active Army commander for processing. [Emphasis in original.]

2. There was a flurry in the district court over whether the application was returned for the additional reason that it was incomplete. Respondents have understandably abandoned that contention.

As the Army apparently construes the Regulation, a reservist who has been ordered to report for active duty must submit his application more than 90 days before his reporting date.[3] If he does not, the application will not be processed until after he reports. In this case, the application was returned to appellant to be processed again at his "initial duty station" on active service.[4] Most important to our decision here, AR 135–25 clearly states that an application for conscientious objector status "is *not* a basis for delay in reporting for designated duty." Therefore, if the Regulation is valid as applied to Dr. Spencer, he has no basis for refusing to enter upon active status.

Appellant argues that AR 135–25 is invalid because it is inconsistent with 50 U.S.C. App. § 456(j), as embodied in Department of Defense Directive 1300.6. Section 456(j) provides that:

> Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form.

DOD 1300.6 adopts this section by specific reference[5] and provides for recognition of claims of conscientious objection by those in the armed forces, including the reserve.[6]

In Ehlert v. United States, *supra,* however, the Supreme Court dealt with the relationship between section 456(j) and a similar regulation in a manner adverse to appellant's contention. The petitioner in *Ehlert,* a draftee, filed his conscientious objection claim after receiving his induction notice. The local draft board declined to reopen his classification, relying on 32 C.F.R. § 1625.2 (1971), which provides in relevant part that

> the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * *.[7]

The Supreme Court reasoned that:

> The [Selective Service] System needs and has the power to make reasonable timeliness rules for the presentation of claims to exemption from service.
>
> * * * * * *
>
> The only unconditional right conferred by [section 456(j)] upon conscientious objectors is exemption from

---

3. Paragraph 8*a* of AR 135–25 does not by its terms assure processing of any application received more than 90 days from the applicant's reporting date. Rather, it states that 90 days is the *normal* minimum period.

4. Pursuant to AR 635–20, which covers personnel in active military service.

5. See DOD 1300.6 V.

6. DOD 1300.6 provides, *inter alia*:

 IV A The fact of conscientious objection does not exempt men from the draft. However, the Congress * * * has deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces * * *.

 IV B Consistent with this national policy, bona fide conscientious objection as set forth in this Directive by persons who are members of the Armed Forces

will be recognized to the extent practicable and equitable.

 VI B 2 Pending decision on the case and to the extent practicable the person will be employed in duties which involve the minimum conflict with his asserted beliefs * * *.

7. 32 C.F.R. § 1625.2 allows reopening of classification if "the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." The Court considered the possibility that crystallization of conscientious objection constituted such a change in circumstances but accepted the Government's interpretation that the proviso should be confined to "objectively identifiable" and "extraneous" events and circumstances such as personal injury or death in the registrant's family making him the sole surviving son. 402 U.S. at 99, 91 S.Ct. 1319.

*combatant* training and service. * * * Consequently, requiring those whose conscientious objection has not crystallized until after their induction notices to present their claims after induction would work no deprivation of statutory rights, so long as the claimants were not subjected to combatant training or service until their claims had been acted upon.

That those whose views are late in crystallizing can be required to wait, however, does not mean they can be deprived of a full and fair opportunity to present the merits of their conscientious objector claims for consideration under the same substantive criteria that must guide the Selective Service System. * * * A system in which such persons could present their claims after induction, with the assurance of no combatant training or service before opportunity for a ruling on the merits, would be wholly consistent with the conscientious objector statute. [Footnotes omitted.]

402 U.S. at 102–104, 91 S.Ct. at 1322. Accordingly, the Court held that review of Ehlert's claim was validly denied until after induction.

■■ This case is clearly controlled by *Ehlert*. If the Selective Service System can "make reasonable timeliness rules for the presentation of claims to exemption from service," the Army Reserve similarly "needs and has [that] power." Moreover, Dr. Spencer, like Ehlert, is assured under the applicable army regulation, AR 635–20, that pending a decision on his application for a conscientious objector discharge, he will *to the extent practicable be employed in duties which involve minimum conflict with his asserted beliefs.* Dr. Spencer's situation provides, if anything, a weaker case for relief than Ehlert's. Unlike Ehlert, Dr. Spencer is already technically a member of the armed forces. Moreover, AR 135–25 is less onerous in some ways than the regulation at issue in *Ehlert,* for AR 135–25 normally, see note 3 *supra,* permits the reservist who receives his orders more than 90 days prior to his reporting date to have his claim adjudicated before going on active duty while the regulation in *Ehlert* prohibits pre-induction review no matter how long the period between notice and reporting date.

Accordingly, whatever our views might have been under our cases decided before *Ehlert,*[8] we believe that *Ehlert* requires us to find AR 135-25 valid as applied to Dr. Spencer.[9] Affirmed.

8. See, e. g., United States v. Stafford, 389 F.2d 215 (2d Cir. 1968) ; United States v. Gearey, 368 F.2d 144 (2d Cir. 1966).

9. By letter to the court, both parties have addressed themselves to the effect of

*Ehlert.* Appellant argues that the case is distinguishable, but we do not agree. Appellant also asks for reargument, which we do not regard as necessary.