Felton J. EARLS, III, Petitioner-Appellant,

v.

Stanley R. RESOR, Secretary of the Army, et al., Respondents-Appellees.

No. 304, Docket 71–1891.

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1971.

Decided Nov. 30, 1971.

Steven J. Hyman, Kunstler, Kunstler & Hyman, New York City, for petitioner-appellant.

John F. McHugh, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., Daniel Riesel, Asst. U. S. Atty., of counsel), for respondents-appellees.

Before WATERMAN, SMITH and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Felton J. Earls III, a physician presently holding the rank of Captain in the United States Army Reserve, appeals from a summary judgment entered on July 19, 1971 in the United States District Court for the Southern District of New York, Lloyd F. MacMahon, Judge, dismissing his petition for a writ in the nature of *mandamus* on the ground that the Army's refusal to rule upon his application for discharge as a conscientious objector before he entered upon active duty was consistent with Army Regulation (AR) No. 135–25(8) (a),[1] in effect on the date petitioner's application had been filed. The district court dissolved a preliminary injunction issued on December 28, 1970, 327 F.Supp. 354, but this court granted a stay pending an expedited appeal. We find no error and affirm the judgment.

A product of the Army Reserve Officers Training Program, petitioner was commissioned a Second Lieutenant upon his graduation from college in 1963, but obtained a deferral of active duty to attend medical school. Upon completion of medical school, petitioner utilized the "Berry Plan" as a Captain in the Army Reserve Medical Corps in order further to postpone his active duty service while taking his internship. Application for a

---

1. Paragraph 8a of AR 135–25, entitled Army National Guard and Army Reserve, Disposition of Conscientious Objectors, provides in pertinent part as follows:

 *Assignment.* * * *
 a. Normally a minimum period of 90 days is required to finalize the processing of an application submitted in accordance with this regulation. The sub-

mission of an application for discharge by reason of conscientious objection subsequent to the date the individual's orders are published announcing reporting date for active duty for training is *not* a basis for delay in reporting for designated duty. * * * [emphasis in original]

third deferment to complete his residency was denied, and on June 22, 1970, he received orders to report for active duty on November 5, 1970.

Five weeks later petitioner sent a letter to his Commanding Officer at the United States Army Reserve Components Personnel Center at Fort Benjamin Harrison, Indiana advising of a "crisis in circumstance and belief" and requesting the forms necessary to apply for discharge as a conscientious objector.

The Army responded promptly on August 7, 1970 with a letter enclosing AR 135–25, effective on August 15, 1970, which provided in a new subparagraph, AR 135–25(8) (a), set forth above, that no delay would be granted in implementing active duty orders pending a decision on a conscientious objector application unless the application were submitted at least ninety days prior to the active duty reporting date. Unknown to petitioner, the version of AR 135–25 still in effect on August 7, and still to be in effect until August 15, had been interpreted by the Army to call for postponement of active duty until a decision was reached on the conscientious objector application pursuant to Gordon v. Resor, 323 F.Supp. 268 (S.D.N.Y.1970), where the application was submitted on the eve of call up.

Petitioner submitted his completed application on September 22, 1970, forty-five days after receiving the forms and about six weeks before his active duty reporting date. In his affidavit in support of an order to show cause on No-

vember 3, 1970, petitioner explained the delay in submission:

> Because of a great deal of soul searching and attempts to resolve the conflicts within me, I submitted my application in (sic) or about September 22, 1970. At that time I had amassed my letters of reference as expeditiously as possible and had determined the full nature of my beliefs of conscientious objection.

On October 29, 1970, petitioner was informed that his application would be forwarded to his active duty station for processing.[2]

▮ Although the issue of jurisdiction has not been raised by the parties, we note that our exercise of jurisdiction to determine whether petitioner's procedural rights have been violated by the Army's failure to follow pertinent regulations and statutes is supported by Spencer v. Laird, *supra,* n. 2, at 906, and the cases cited therein.

That AR 135–25(8) (a) implements a reasonable and valid timeliness rule is no longer open to question. Spencer v. Laird, *supra.*

▮ Petitioner seeks to escape application of the regulation, as amended, to his case. Concededly, it would not apply if his letter of July 29, 1970, rather than the completed application of September 22, 1970, is deemed the operative notice initiating the processing of his claim. Gordon v. Resor, *supra.* However, a letter adverting to a crisis in conscience and requesting the appropriate forms to apply for a discharge falls far short of the application called for by

2. There is nothing to petitioner's complaint that the Army had not at this point begun to process his application inasmuch as the Army's standard and entirely reasonable construction of AR 135–25(8) (a) calls for forwarding applications received within ninety days of a reporting date to the prospective active duty station to begin processing when the applicant reports there. Spencer v. Laird, 442 F.2d 904, 907 (2d Cir. 1971). To require that the procedure be divided between two commands would place an administra-

tive burden on the Army disproportionate to the benefits, if any, accruing to the applicant.

Similarly, we reject petitioner's contention that the Army was obliged to process his application during the pendency of this litigation. To allow petitioner to accomplish by litigation precisely the result we deem properly to have been denied him under the pertinent regulations, would be an open invitation to others to use the same device.

AR 135–25(6) [3] in order to initiate the discharge process. As a practical matter, such a letter gives the Army no basis on which to proceed, nor even the assurance it will be followed up. Indeed, petitioner's affidavit, set forth above, suggests that he had not, prior to his September 22, 1970 submission, determined the full nature of his beliefs as to conscientious objection. Petitioner, as well as the Army, is bound by the requirements of the governing regulation, *cf.* Hammond v. Lenfest, 398 F.2d 705, 715 (2d Cir. 1968), and he did not comply with the express requirement of AR 135–25(6) until September 22, 1970. It was that submission, falling within the purview of AR 135–25(8) (a), which the Army properly regarded as initiating the discharge process.[4]

Petitioner's weightiest argument addresses itself to the Army's response on August 7, 1970 to his letter of July 29, 1970 with a version of AR 135–25 to become effective on August 15, 1970. He states that he was misled by the Army's improper attempt to anticipate the effective date of a new regulation substantially altering his rights, without at least being warned of the effect the change would have on him; indeed he avers that had he understood the consequences of delay, an application would have been timely filed in the week available to him—a contention weakened somewhat by his affidavit implying that his beliefs on conscientious objection did not fully crystalize until more than a month later. Petitioner's complaint in essence is one of insufficient notice, since it would have availed him nothing to have received the regulation still in effect on August 7, 1970 unless he understood that it would shortly be superseded and his rights altered. He needed to know that he had one week to submit his application if he wished it to be processed before his active duty reporting date.

[redacted] A response to requests for a given regulation by sending the version to become effective within one week of request is reasonable administrative practice, at least where, as here, the effective date is set out in italics on a line by itself immediately below the subject title of the regulation, and a reference to the superseded regulation appears in a footnote on the same page. It is not absolutely certain that petitioner could not have submitted his application within one week, and the new regulation may be said to operate to his detriment, but it cannot be said that he was misled by the Army. Not only was it clear on the face of the regulation that it was to become effective on August 15, 1970, but in the headnote on the same page it was stated that "This revision * * * adds to paragraph 8, subparagraphs *a*

3. AR 135–26(6) provides that:

   *Applications for discharge.* * * *

   a. Applications for discharge by reason of conscientious objection may be submitted on DA Form 2496 (Disposition Form) or by letter. The individual requesting discharge will include in the application, or as an inclosure thereto, the information indicated below as the minimum required for consideration of his request.

   The section's requirements include comprehensive and detailed sets of inquiries under the headings "General Information," "Religious training or beliefs held," "Participation in Organizations," and "References."

4. United States v. Mizrahi, 417 F.2d 246 (9 Cir. 1970) and United States v. Turner, 421 F.2d 1251 (3 Cir. 1970), relied on by petitioner, are readily distinguishable. The former, a Selective Service case, deals not with the sufficiency of a brief letter to substitute for a required detailed application, but with an ambiguously couched appeal by the registrant from his classification by his local board, which led to the appeal board's failure to follow its own regulations. The latter, also a Selective Service case, does involve the adequacy of a letter in lieu of required forms to give a local board notice of a conscientious objector claim; but there the registrant was an uninformed, barely literate young man, who, not realizing what was expected of him, was treated in an adversary fashion by his local board—circumstances far removed from those at bar.

and *b* provisions for compliance with active duty orders notwithstanding submission of application for discharge under the regulation. \* \* \* " The notice of the change's effect on petitioner might have been made doubly clear by enclosing the old regulation, but there was no concealment or deception. The Army did not act unreasonably; it could expect the officer to read the material submitted. A careful reading of the materials provided would have apprised petitioner of his options. We are not constrained to require more under the circumstances of this case. His application may be processed at his new station upon his reporting there.

Affirmed.