Joyce **HOCKETT**, Plaintiff,

v.

**ADMINISTRATOR OF VETERANS AFFAIRS, and Executive Director of Civil Service Commission, Defendants.**

**Civ. A. No. C 73–977.**

United States District Court,
N. D. Ohio, E. D.

Aug. 1, 1974.

Order Nov. 25, 1974.

Richard Brudzynski, Cleveland, Ohio, for plaintiff.

Joseph A. Cipollone, Asst. U. S. Atty., for defendants.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Plaintiff Joyce Hockett brings this action against the Administrator of the United States Veterans Administration and against the Executive Director of the United States Civil Service Commission to enjoin the operation of the Commission's Veterans Readjustment Appointment Regulations, 5 C.F.R. § 307.-101 et seq. on the ground that they racially discriminate against the plaintiff in violation of law.

Plaintiff filed her original complaint in this court on September 14, 1973, pursuant to Title VII of the Civil Rights Act of 1964, Section 717(c), 42 U.S.C. § 2000e–16(c), having exhausted her administrative remedies as required by the Act, 42 U.S.C. § 2000e–16(b), and the regulations promulgated thereunder, 5 C.F.R. §§ 713.211–713.236. Following the filing of defendants' motion to dismiss or in the alternative for summary judgment, plaintiff filed an amended complaint on February 25, 1974. This amended complaint asks for class relief as well as individual relief, and supplements the original statutory claim with three causes of action arising under the United States Constitution. Plaintiff asserts that the regulations in issue here not only contravene the Civil Rights Act of 1964, as amended, but also violate the Due Process Clause of the Fifth Amendment and the constitutional prohibitions against bills of attainder and ex post facto laws. Plaintiff seeks a declaration that the regulations are invalid, an injunction removing those regulations as an obstacle to the employment of plaintiff and her class by agencies of the federal government, an award of back pay and related damages, and an award of attorney fees. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202, and 42 U.S.C. § 2000e–5(f) and § 2000e–16(c).

Presented for decision is the defendants' renewed motion of March 7, 1974 to dismiss or in the alternative for summary judgment as to the amended complaint. The motion, treated as a motion for summary judgment, is being considered on the pleadings and the administrative record of the Civil Service Commission which has been filed in this case.

### I.

Plaintiff's amended complaint states that

. . . Joyce Hockett is a Negro citizen of the United States and a resident of Cleveland, Ohio. She is a veteran of the United States Army, having served therein from February 9, 1970 until December 1, 1972 at which time she was discharged under "other than honorable conditions."

The amended complaint further recites that

On February 12, 1973, plaintiff attempted to make an application for a position with the Veterans Admini-

stration Hospital, 10701 East Boulevard, Cleveland, Ohio. The position she sought was a "Veterans Readjustment Appointment" authorized by Executive Order No. 11521, 1970 U.S.Cong.Code & Admin.News 6236.

Plaintiff was told by defendants' agent that such employment was not available to her because of the character of her discharge from military service.

This refusal to employ plaintiff was done pursuant to rules and regulations promulgated by the defendants herein.

Plaintiff contends that

The effect of the rules, regulations and practices of the defendant agencies have been and continue to be to limit, segregate and classify Negro applicants for employment on the basis of race and color in violation of 42 U.S.C. Section 2000e et seq. and Executive Order 11521.

The administrative record contains the report, dated April 23, 1973, of Nathalie S. Boswell, Chairman, Equal Employment Opportunity counselors at the Cleveland VA Hospital. Under date of March 5, 1973, the report states:

I received a phone call from Mr. Brudzynski [plaintiff's counsel] regarding Joyce Hockett who had applied for a nursing position for RN and was told she would not be hired due to her undesirable discharge.

The report continues:

He told me she had talked with a man in Personnel. He was filing a complaint on her behalf.

On the same day Boswell reported ". . . there was no record of her application, and no man remembered interviewing her." Boswell talked with Brudzynski again on March 5, and also on March 6, attempting to identify with whom Joyce Hockett had spoken, and whether she had made an application. On March 7, the report of Boswell states

Finally ferretted out Mrs. Pride in Personnel who said a woman had come to her one day asking for a VRA ap-

pointment. The woman never gave her name. When the woman mentioned her undesirable discharge, Mrs. Pride told her she was not eligible for the VRA program with a UD. The woman then asked Mrs. Pride if there was someone in the hospital who could help her change her discharge, and she was told to try one of the Contact men. Mrs. Pride never heard anything more about it, nor did the woman ever make out an application.

In a conference on March 8, 1973, between Boswell, Brudzynski, and Hockett, it was disclosed by Hockett that "she was not an RN but because of her service training could be an LPN or lab technician, the latter being what she preferred." Boswell then explained to them

since Miss HOCKETT had not filed an application, there was nothing I could do for her until she had filed and been rejected.

The entry continues:

I gave Mr. Brudzynski a copy of FPM Letter 713–17 as per his request, and told him to contact me after Miss HOCKETT had filed her application.

The report reflects several later telephone conversations between Boswell and Brudzynski, in the last of which on March 29, Boswell

told him again that since Miss HOCKETT had still not been rejected, she still had no complaint as far as EEO regulations were concerned. . . I again reminded him to contact me when and if Miss HOCKETT was rejected because of her UD [undesirable discharge].

Noting that she had not heard from "either of them," on April 20 Boswell concludes

Since Miss HOCKETT has shown me no evidence of a case except on hearsay, this is not a legal complaint. When she comes to a counselor saying she has made application and been rejected, then it will be handled in the same manner as any other com-

plaint, including all legal notices, letters, etc. which should be forthcoming.

Notwithstanding her failure to make a written application for employment, Hockett, on April 16, 1973, filed a written complaint of discrimination with the hospital director, Dr. Samuel Aspis. In addition to appointing Richard Brudzynski, attorney-at-law, as her representative, her administrative complaint, framed as a class action, asked that the regulations in question be rescinded, that offers of employment be made to plaintiff and other members of her class, that plaintiff and other class members "be awarded back pay from the date of refusal or limitation of employment rights on the basis of said rules and regulations," and that such other relief "as is equitable and just" be granted.

Plaintiff's administrative complaint as well as the EEO Counselor's report were forwarded to the Veterans Administration Central Office in Washington, D. C., where they were considered by the Office of the General Counsel of the VA. On May 21, 1973, Assistant General Counsel Howard M. Denney informed the plaintiff by letter, with a copy to her attorney, that her complaint of race discrimination was rejected. Specifying the ground of rejection the letter, in part, read as follows:

The incident complained of occurred on February 12, 1973, at which time you contacted the Personnel Service of the VA Hospital, Cleveland, Ohio relative to employment under the "Veterans Readjustment Appointment Act." The record reveals that you left the military service with an undesirable discharge under "other than honorable conditions." The Veterans Readjustment Appointment Regulations require the veteran to be discharged under honorable conditions. . . .

The letter concluded:

It has therefore been determined that your complaint does not fall within the purview of Federal Personnel Manual 990–1, Chapter 713 and Executive Order 11478 [regarding equal employment opportunity in federal agencies].

On June 5, 1973, plaintiff's counsel requested an appeal to the Board of Appeals and Review, United States Civil Service Commission, pursuant to 5 C.F.R. § 713.231(2). Counsel's letter included a copy of the complaint and the final decision of the VA, and stated that

My client believes that the policies of the Veterans Administration and the Civil Service Commission denying or limiting job opportunities for less-than-honorably discharged veterans raise significant questions involving systemic racial discrimination.

Counsel was notified on June 29, 1973, that plaintiff's appeal having been timely filed, was accepted by the Board of Appeals and Review.

On August 13, 1973, Mr. William P. Berzak, Chairman of Board of Appeals and Review, notified plaintiff and her counsel by letter of the Board's decision affirming the rejection of plaintiff's complaint. The Board's affirmance, however, was on a different ground from that relied upon by the Veterans Administration. Chairman Berzak noted that the Civil Service Commission's Equal Opportunity Regulations, at 5 C.F.R. § 713.212(a), provide for "the acceptance of a complaint from any aggrieved employee or *applicant for employment* . . . ." (emphasis supplied) but that "the record indicates that complainant never actually filed an application for employment." On that basis, Chairman Berzak stated, "the Board of Appeals and Review finds that her complaint of discrimination does not come within the purview of the Equal Opportunity Regulations."

As earlier mentioned, the plaintiff filed her action in this court on September 14, 1973; and she did so, as permitted by, and within the time allowed by section 717(c), 42 U.S.C. § 2000e–16(c). Thereafter, the defendants' motion for summary judgment was filed, directed

to the plaintiff's amended complaint. This motion raises the issues now before this court.

## II.

The initial question which must be decided is whether or not plaintiff Joyce Hockett has standing to raise either the statutory or constitutional questions which she has pleaded in her amended complaint. None of the parties has raised this issue here although lack of standing was the basis on which the Board of Appeals denied plaintiff administrative relief. Because the jurisdiction of this court turns initially on the standing question, the court considers the issue on its own motion.

## A.

The statutory standing question depends on whether the plaintiff was required to make an application for a position with a federal agency as an essential prerequisite for invoking the antidiscrimination procedures of Title VII of the Civil Rights Act of 1964, made applicable to agencies of the federal government under the 1972 amendments, 42 U.S.C. § 2000e–16.

The amended complaint, as previously noted, states that plaintiff

> attempted to make an application for a position with the Veterans Hospital

and that she

> was told by defendants' agents that such employment was not available to her because of the character of her discharge from military service

and that she thereafter initiated a complaint of race discrimination.

Nowhere in her complaint does plaintiff allege that she ever formally filed an application. In fact, the report of the EEO counselor, whose factual statements are not contested by plaintiff, indicates that plaintiff had not filed an application at the time she lodged her formal complaint of discrimination with the hospital director. Thus despite the plaintiff's allegation in her amended complaint that she "attempted to make an application for a position," the uncontested facts set forth in the report of the hospital's EEO counselor establish that the plaintiff never made an application, oral or written, for a position. This failure to make an application is in the face of the uncontested fact shown in the report that plaintiff and her counsel were specifically informed that an application had to be filed before a complaint could be accepted for consideration.

In deciding whether the plaintiff's failure to make application for a position deprives her of standing to bring a claim in this court, based on Title VII, section 717, 42 U.S.C. § 2000e–16, adopted March 24, 1972, it is imperative that the statutory scheme be examined. The 1972 amendment to the Civil Rights Act establishes a system of administrative review within the federal agencies and the Civil Service Commission of charges of discrimination and provides for resort to the federal courts upon exhaustion of administrative remedies.[1] In reviewing the pertinent statutory sections and the derivative regulations of the Civil Service Commission (CSC) the appearance of the term "applicants for employment" has been itali-

---

1. Prior to 1972 discriminaton in federal employment had been barred not by statute but by Executive Order 11478 (Aug. 8, 1969, 34 F.R. 12,985, as amended by Executive Order No. 11590 (April 23, 1971, 36 F.R. 7,831). That Executive Order reads in part as follows:

    Sec. 2. The head of each executive department and agency shall establish and maintain an affirmative program of equal employment opportunity for all civilian employees and *applicants for employment* within his jurisdiction . . . .

    Sec. 3. The Civil Service Commission shall provide leadership and guidance to departments and agencies in the conduct of equal employment, opportunity programs for the civilian employees of and *applicants for employment* within the executive departments and agencies . . . . [Emphasis supplied.]

cized wherever it appears. Sections 717(a), 42 U.S.C. § 2000e–16(a) states that

All personnel actions affecting employees or *applicants for employment* . . . in executive agencies . . . shall be made free from any discrimination based on race, color religion, sex, or national origin. [Emphasis supplied.]

Section 717(b), 42 U.S.C. § 2000e–16(b) gives the CSC supervisory and enforcement responsibility over the equal employment opportunity program in federal agencies. Section 717(c), 42 U.S.C. § 2000e–16(c) provides, in part, that

. . . an employee or *applicant for employment,* if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant. [Emphasis supplied.]

Pursuant to this statutory command the CSC has promulgated regulations setting forth a complaint and appeals procedure for handling charges of discrimination in federal agencies. 5 C.F. R. § 713.212, entitled "Coverage," requires that each federal agency

. . . provide in its regulations for the acceptance of a complaint from any aggrieved employee or *applicant for employment* with that agency who believes that he has been discriminated against because of race, color, religion, sex or national origin. [Emphasis supplied.]

Section 713.215 of the regulations provides that

The head of the agency or his designee . . . shall reject those allegations in a complaint which are not within the purview of § 713.312.

.    .    .    .    .    .

Finally, section 713.231 of the regulations permits a complainant to

. . . appeal to the [Civil Service] Commission the decision of the head of the agency or his designee: 1) to reject his complaint, or a portion thereof, for reasons covered by § 713.215. . . .

As previously noted, a civil action in the district court may be filed following the final decision of the agency or of the CSC, as is the case here. (The scope of such a civil action is discussed in footnote 4, *infra.*)

Nowhere does section 717, nor any of the derivative regulations, define "applicant" in the term "applicant for employment." The legislative history of the 1972 amendments is mute on this subject, and Executive Order 11521, the predecessor to the 1972 amendments (section 717), provides no assistance either. Furthermore, insofar as this court is aware there is no reported decision by any federal court that has construed the meaning of the term "applicant for employment," or that has determined how a person may qualify as an "applicant for employment."

■ Giving the term a reasonable construction, it is concluded that "applicant for employment," as used in section 717, and the derivative regulations of the Commission, contemplates a person who has filed a written application for a particular position with a government agency, or who has sought to file such an application but has been denied the opportunity to file it. It is further concluded that the written application need not necessarily be on a form supplied by the agency, as long as the writing submitted by the applicant particularizes the position sought and supplies the information requested in the agency's application form. Decisions in other situations that have construed the requirements of an "application" support the foregoing conclusions.[2]

---

2. *See, e. g., Earls v. Resor,* 451 F.2d 1126 (2 Cir. 1971) (application for conscientious objector discharge from armed forces must

be on special form or in letter setting forth specific request and containing answers to questions contained on the form) ; United

There are several important policy reasons for reading these requirements into the definition of "applicants for employment" in section 717 of the Civil Rights Act of 1964. First, the complaint procedure established by section 717 and elaborated in the Civil Service regulations is a multi-tiered system designed to reconcile differences and resolve grievances relating to discrimination in federal employment. In creating this system Congress significantly expanded the rights of those qualified to invoke it, and at the same time placed a new administrative responsibility on all federal agencies. Because the complaint procedure is complex and expensive, the triggering event which gives individuals the power to invoke it should be as concrete and specific as possible. Thus, payroll records and related documents on file at federal agencies are specific and concrete proof of an individual's status an an "employee." Likewise, a written application form or letter is the only specific and concrete evidence that a person is, in fact, an "applicant for employment."

■ Second, section 717 applies by its own terms only to "personnel actions" of federal agencies. The use of this term necessarily contemplates some official act or procedure and certainly more than a mere prediction of how an agency will act in a given situation. In the context of hiring, the term "personnel action" must mean the actual rejection of an application, not simply a verbal communication by a staff member that a person would be rejected if he applied. Such official rejection cannot issue unless a written application of some sort has first been submitted.

Third, under the construction of the term "application for employment" previously adopted the submission of a written application is an act which is entirely within the control of the individual who desires to apply. Therefore, requiring such an application will not place a new or significant burden upon an individual who wishes to invoke the grievance procedure mandated by section 717 of the Act. All the person need do is to submit a written application and be rejected, and he will have standing to file a complaint of discrimination. In the rare case where an agency, rather than rejecting an application, simply refuses to accept or file it, then the applicant, having at least presented his written application to the agency, will still have standing to invoke the complaint procedures.

■ Applying this written application requirement to the uncontested facts of record in this case, it is concluded that plaintiff Joyce Hockett cannot qualify as an "applicant for employment." Because plaintiff is not an "applicant for employment," she does not have standing to file this action under section 717(c), 42 U.S.C. § 2000e–16(c). Moreover, she cannot show that she is prejudiced by this ruling since she was told in March 1973, very early in the grievance process, that a written application was necessary.

### B.

■ In counts 2, 3, and 4 of her amended complaint, after incorporating all the facts previously alleged, plaintiff states claims arising under the Due Process Clause of the Fifth Amendment and the prohibitions against bills of attainder and ex post facto laws of Article I, Section 9 of the United States Constitution. Whether or not plaintiff has standing to raise these issues must be determined according to the jurisdictional limitations established by Article 3, Section 2 of the United States Constitution, as interpreted by the United States Supreme Court.

In Data Processing Service v. Camp, 397 U.S. 150–3, 90 S.Ct. 827, 830, 25 L.

States v. Mayton, 335 F.2d 153 (5 Cir. 1964) (handwritten letter will suffice as an application for a court order pursuant to section 601a of the Civil Rights Act of 1960, 42 U.S.C. § 1971(e), declaring applicant qualified to vote); and Fuchs v. District Director, INS, 329 F.2d 114 (1 Cir. 1964) (application by alien for draft exemption may be made either on formal application form or in letter specifically requesting draft exemption).

Ed.2d 184 (1970), the Court formulated a two-step test for determining standing:

> The first question is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise. . . .
>
> \* \* \* \* \* \*
>
> [The second question is] whether the interest sought to be protected by the complainant is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question."

The first step, the "injury in fact" requirement, was recently reaffirmed in Linda R. S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973) where the Court said:

> . . . in the absence of a statute expressly conferring standing, federal plaintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.

Likewise, in the even more recent case of United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed. 678 (1974), the Court stated:

> The acceptance of new categories of judicially cognizable injury has not eliminated the basic principle that to invoke judicial power the claimant must have a "personal stake in the outcome," Baker v. Carr, *supra*, at 204 of 369 U.S., 82 S.Ct. at 703 (1962), or a "particular concrete injury," Sierra Club, *supra*, 405 U.S. at 740–741, n. 16, 92 S.Ct. at 1369, 31 L.Ed. 2d 636, "that he has sustained . . . a direct injury . . . ." Ex parte Levitt *supra*, 302 U.S. at 634, 58 S. Ct. at 1, 82 L.Ed. 493, in short, something more than "generalized grievances," Flast, *supra*, 392 U.S. at 106, 88 S.Ct. at 1956, 20 L.Ed.2d 947.[3]

See also Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed. 706 (1974).

The constitutional standing question in this case turns on whether plaintiff Joyce Hockett has suffered "injury in fact" by operation of the Veterans Readjustment Appointment regulations, 5 C. F.R. § 307.101 et seq., even though she never filed a written application for employment at the Veterans Administration. Because plaintiff did not submit a written application, there is no basis for determining whether, without considering the nature of her army discharge, she would have been otherwise qualified for any available position. In fact, the report of the EEO counselor indicates that there was even confusion as to whether the plaintiff was seeking or was qualified for a position as registered nurse, licensed practical nurse or lab technician.

Thus, this court is forced to speculate that if the plaintiff had applied for one of these positions she would have been otherwise qualified for these positions and she would have been rejected because of her undesirable discharge. The "injury in fact" rule is designed to avoid the determination of constitutional issues on this sort of speculative basis. As stated in Schlesinger v. Reservists to Stop the War, *supra* at 5092, 94 S.Ct. at 2932:

> . . . when a court is asked to undertake constitutional adjudication, the most important and delicate of its responsibilities, the requirement of concrete injury further serves the function of insuring that such adjudication does not take place unnecessarily. . . . [C]oncrete injury removes from the realm of speculation whether there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party. . . .

Not having applied for a job with the VA, plaintiff cannot show that she was "injured in fact" by the Veterans Readjustment Appointment regulations.

3. As explained by the district court in Dash v. Mitchell, 356 F.Supp. 1292, 1295 (D.C. D.C.1972):

> Injury in fact is what the Supreme Court has thought imparts that "adversary context" to litigation required by the "case or controversy" clause of Article III of the Constitution.

Therefore, it is concluded and determined that plaintiff does not have standing to challenge the constitutionality of these regulations as she attempts to do in counts 2, 3, and 4 of her amended complaint.

This conclusion is supported by the decision in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), where the Supreme Court held that a Negro, who had been denied service at the bar of a private club but who had never applied for membership in the club, did not have standing to contest the membership policies of that club. The Court stated:

> [I]n this case appellee was not injured by Moose Lodge's membership policy since he never sought to become a member. *Id.* at 167, 92 S.Ct. at 1968.

Likewise, although plaintiff expressed interest in a position at the VA she never applied for such a position and, therefore, she does not have standing to challenge the VA's hiring policies.

### III.

■ Because it is determined that plaintiff lacks standing to raise the statutory and constitutional claims set forth in her amended complaint, the court need not consider either the materiality or sufficiency of plaintiff's class action allegations or the merits of her claim of racial discrimination. However, as noted previously, the VA ignored the standing question and rejected plaintiff's complaint on the ground that she did not qualify under the Veterans Readjustment Appointment regulations.

Likewise, the defendants' motion for summary judgment is based on the same ground, and not upon plaintiff's lack of standing. These actions of the defendants persuade this court that it should not order an immediate dismissal of the action, as requested by the defendants. Rather, dismissal of the action should be ordered conditionally:

(1) If the plaintiff fails by August 21, 1974 to file her written application for employment with the Veterans Hospital in Cleveland in accordance with the requirements of section 717 and the derivative regulations of the Civil Service Commission as here construed and applied, the action is dismissed with prejudice.

(2) If the plaintiff files an application for a position at the Veterans Hospital and such application is rejected on the ground of her undesirable discharge, pursuant to the Veterans Readjustment Appointment regulations, the defendant Civil Service Commission is directed to grant the plaintiff a full evidentiary hearing, pursuant to its regulations, upon plaintiff's allegation in her amended complaint that

> The effect of the rules and regulations and practices of the defendant agencies have been and continue to be to limit, segregate and classify Negro applicants for employment on the basis of race and color in violation of 42 U.S.C. section 2000e et seq. and Executive Order 11521.[4]

On or before September 1, 1974, the parties are directed jointly, or individually, to report to the court whatever actions are taken by the parties pur-

---

4. Plaintiff argues that she has a right in a Title VII action to a trial de novo in the district court upon appeal from an adverse decision of the Civil Service Commission. Defendants insist, on the other hand, that the plaintiff is limited in the district court solely to a restricted review of the administrative record. Though this court's conditional order moots the question of the nature and scope of any trial de novo in the present action, in the event of a further civil action under section 717(c) arising out of later proceedings between the parties, this court will be

bound by its ruling on this question in Abrams v. Johnson, 383 F.Supp. 450 (N.D.Ohio 1974).

Moreover, under the facts of this case, it is particularly appropriate that the Civil Service Commission, as promulgator of the regulations which are challenged here, be given the first opportunity to consider the evidence relating to their legality. The Commission has both the expertise to understand its own regulations and the power to correct any defects in them. Thus, the job of reviewing Civil Service regulations should be conducted, in the first instance, by the Commission itself.

suant to the foregoing orders, and thereupon the appropriate final order provided in either paragraph (1) or (2), above, shall become effective.

It is so ordered.

### ORDER

Pursuant to the court's instructions in its Memorandum and Order of August 1, 1974, defendants' counsel has filed a report to the court entitled "Supplemental Memorandum in Support of Federal Defendant's Motion to Dismiss;" a copy of which is attached hereto.

Upon the representation of defendants' counsel that plaintiff Joyce Hockett failed to file by August 21, 1974, an application for employment with the Veterans Administration Hospital, and, further, that plaintiff filed an application for such employment on September 9, 1974, without including her discharge papers which are a necessary part of such application, it is concluded and determined that plaintiff has not met the conditions set forth in this court's Memorandum and Order of August 1, 1974. Plaintiff's action is, therefore, dismissed with prejudice.

It is so ordered.