Elliot William JACOBS

v.

John C. STETSON, Secretary of the Air Force.

Civ. A. No. CA 1–77–52.

United States District Court,
N. D. Texas,
Abilene Division.

April 28, 1978.

---

Joan E. Goldberg, Anders R. Sterner, Jonathan N. Tanner, New York City, Frank D. McCown, Fort Worth, Tex., for plaintiff.

Kenneth J. Mighell, U. S. Atty., William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., for defendant.

## MEMORANDUM AND ORDER

MAHON, District Judge.

This action was brought by Petitioner Dr. Elliot William Jacobs seeking a preliminary injunction restraining the Respondent Secretary of the United States Air Force from ordering Petitioner to perform active duty service and from pursuing any court-martial proceedings against Petitioner pending determination of an application filed by Petitioner with the United States Air Force seeking a discharge as a conscientious objector. In addition Petitioner sought an order from this Court transferring the processing of the application for conscientious objector status from Dyess Air Force Base in Texas to McGuire Air Force Base in New Jersey.

The Court having considered the original petition, the amended petition, having heard oral evidence at a hearing, having considered the briefs and memoranda submitted both in support and in opposition, and having considered the relevant case law has determined that Petitioner's writ of habeas corpus and Petitioner's motion for a Court order transferring the processing of the application for conscientious objection should be denied. In addition Petitioner's request for a preliminary injunction restraining Respondent from ordering Petitioner to perform active duty service pending determination of conscientious objector application is denied. Respondent is enjoined from prosecuting any court-martial proceeding against Petitioner for failure to comply with active duty orders until the status of Petitioner's conscientious objector status is resolved. Apart from court-martial proceedings Petitioner is not exempt from disciplinary measures for failure to comply with active duty orders issued after the date of entry of this Order and the communication of its contents to Petitioner.

Petitioner is a medical doctor who participated in the Berry Plan of the United States Air Force. Dr. Jacobs entered the Berry Plan in late 1970 during his last year in medical school. As a Berry Plan participant, Petitioner was commissioned an officer in the Air Force Reserve and was deferred from active duty pending the completion of his medical training. Initially Petitioner was deferred from early 1971 through June 1976 to complete residency training in general surgery. In June 1974 Petitioner changed his area of specialization from general surgery to plastic surgery. Consequently the Air Force granted Dr. Jacobs an additional one year deferment, until July 1, 1977 to complete his specialization residency.

On April 24, 1977 the Petitioner attempted to withdraw from his Air Force commitment by tendering a written resignation to the Air Force Reserve in Denver, Colorado. The reason given by Petitioner for the tendering of the April 24, 1977 resignation was that his active duty assignment was to be in general surgery rather than in his specialty of plastic and reconstructive surgery.

On May 17, 1977 the Air Force sent active duty orders to Petitioner instructing him to report to Randolph Air Force Base in Texas on July 17, 1977 for two weeks temporary training, then to report to Dyess Air Force Base for permanent assignment. On July 1, 1977 the Petitioner in a letter sent to Randolph Air Force Base requested a twelve week extension from his active duty date in mid-July based on personal problems and his wife's illness. By letter dated July 11, 1977 the Air Force responded to Petitioner's request for an extension of his active duty date by approving an extension from the July 18th active duty date and entering a new active duty date of August 15, 1977. The same letter stated that the granting of a longer extension would require a detailing of the reasons for such request and a physician's letter verifying the illness of Petitioner's wife.

On July 13, 1977 Petitioner sent two telegrams, one to Randolph Air Force Base and the other to the commanding officer of the hospital at Dyess Air Force Base. Both telegrams stated that petitioner was unable to report for duty and that he wished to apply for discharge as a conscientious objector. Both telegrams requested that appropriate forms be sent to petitioner.

In a letter dated July 14, 1977 from the Director of Personnel Actions at the Air Reserve Personnel Center in Denver, Colorado, Petitioner was informed that the Secretary of the Air Force did not accept Petitioner's tender of resignation submitted on April 24, 1977.

In a follow-up letter to the Air Force on July 20, 1977 Petitioner again communicated that he was unable to report because of conscientious objection and requested necessary forms.

By letter dated August 17, 1977 the Air Reserve Personnel Center in Denver, Colorado forwarded to Petitioner the appropriate forms for tender of resignation and consideration for discharge on the basis of conscientious objection. The letter instructed Petitioner as to the appropriate Air Force Regulation requirements for consideration for discharge on the basis of conscientious objection. Petitioner was informed that the tender of resignation must be signed by him if he wished to be considered for discharge on the basis of conscientious objection.

Included in the procedure outlined to Dr. Jacobs and the instructions provided was the statement,

2. Tender of resignation forms and required information sheet should be completed in triplicate and given to the base personnel officer when you report to him for counseling. We suggest you contact the base personnel officer of the 438 Air Base Group, McGuire AFB, New Jersey 08641, for counseling concerning the provisions of Air Force Regulation 35–24. The copy of this letter, which we have forwarded to the above Air Force Base, constitutes their authority to provide assistance to you in accordance with Air Force Regulation 35–24.

By letter dated August 30, 1977 Petitioner complied with the above instructions and contacted base personnel officer at McGuire Air Force Base, enclosed the completed forms and appropriate copies and requested that the appropriate interviews be arranged as to the determination of his conscientious objector status. A second letter dated August 30, 1977 was sent by Petitioner to the Air Reserve Personnel Center in Denver, Colorado, informing the Directorate of Personnel Actions that the forms supplied by the Air Force on August 17, 1977 had been filed with McGuire AFB. Petitioner also enclosed copies of the forms filed with McGuire AFB for the files of the Air Reserve Personnel Center in Denver.

The Commander of the hospital at Dyess contacted Petitioner by letter dated September 8, 1977. The letter noted that Dr. Jacobs had not reported for active duty as per official orders (the orders of July 11, 1977 that changed the date of active duty from July 18th to August 15th). Petitioner was further informed that he was classified as Absent Without Leave (AWOL). Petitioner was instructed that he should report for active duty immediately and that at the end of a thirty day period classified as

AWOL he would be subject to reclassification as a deserter and to apprehension as a deserter.

On September 9, 1977 by letter the Air Reserve Personnel Center responded to Petitioner's letter of August 30, 1977 concerning the tendering of resignation as a conscientious objector to McGuire Air Force Base. This letter of September 9, 1977 contained the information that due to the current status of his active duty orders Air Force Regulations required that Petitioner should report and process his claim for conscientious objector status at his permanent duty station Dyess Air Force Base. This letter was mailed September 9, 1977 by registered mail, return receipt requested. The evidence indicates that Petitioner never received this letter and that it was returned to the Air Reserve Personnel Center in Denver unclaimed.

Petitioner learned of the contents of this letter on October 4, 1977 in a telephone call from the Air Reserve Personnel Center in Denver to Petitioner in New York. In this telephone conversation Petitioner was informed that his application for conscientious objector discharge should be processed through his active duty base, Dyess Air Force Base, rather than through McGuire Air Force Base as instructed by the letter of August 17, 1977.

On September 12, 1977 the hospital administrator at Dyess Air Force Base communicated by telephone to Petitioner that his classification status was still AWOL.

On September 21, 1977 Dr. Jacobs replied by letter to the Dyess Air Force Base hospital commander's letter of September 8, 1977 which had conveyed the information that Dr. Jacobs was classified as AWOL. In his letter of September 21, 1977 the Petitioner stated,

> In reply to your letter of September 8th, please be advised that I have indeed contacted McGuire Air Force Base and have submitted my application for discharge as a conscientious objector. I am not AWOL and I am not a deserter as you seem to indicate. It is against my conscience and moral principles to partici-

> pate in the military and to wear a military uniform, as I have indicated in my application for discharge as a conscientious objector. Were I to report to you at Dyess would in fact contradict my own principles—which I cannot do  .  .  .

On October 6, 1977 Petitioner was arrested in New York City by Air Force Security and transported in custody to Dyess Air Force Base in Texas. On October 7, 1977 Petitioner Dr. Jacobs was formally charged with desertion.

This cause of action was filed on October 7, 1977 by Petitioner seeking a writ of habeas corpus, a preliminary injunction, and a transfer of the proceedings for the determination of conscientious objector status. By Order of this Court entered October 11, 1977 (filed stamped October 13, 1977) Petitioner's Writ of Habeas Corpus was denied and this Court stayed any action by the Air Force involving the prosecution of desertion charges against Petitioner under the Uniform Code of Military Justice.

By Order of this Court entered October 21, 1977 (file stamped October 25, 1977) the Order of this Court of October 11 was extended. Under said Order of October 21, 1977 Petitioner remained in the custody of Dyess Air Force Base, and Respondent was instructed to provide Petitioner fair consideration of his application for conscientious objection.

The merits of Petitioner's claim for conscientious objector status are not before this Court. The question before this Court is essentially procedural, thus the need for the chronology of orders, applications, and correspondence outlined in the preceding paragraphs.

This Court is fully cognizant and in agreement with the traditional judicial reluctance to interfere with the military based on requirements for orderly government, the doctrine of separation of powers, and the disciplinary structure of the military. *Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Hammond v. Lenfest*, 398 F.2d 705, 710 (2nd Cir. 1968); *Day v. United States*, 441 F.Supp. 165, 170

(N.D.Tex.1977). The military is however by no means an enclave beyond the reach of the judicial scrutiny. *See* Warren, *The Bill of Rights and the Military*, 37 N.Y.U.L.Rev. 181, 188 (1962) as quoted in *Hammond v. Lenfest, supra* at 710. However, in the relationship of the military to its own personnel, the jurisdiction of the judiciary is limited. *See Cortright v. Resor*, 447 F.2d 245, 254 (2nd Cir. 1971), *cert. denied*, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972) also quoting Chief Justice Warren, *The Bill of Rights and the Military*, 37 N.Y.U.L.Rev. 181, 186 (1962). It is a basic precept that the military must comply with the regulations it promulgates. *Smith v. Resor*, 406 F.2d 141, 146 (2nd Cir. 1969). It is within the jurisdiction and duty of this Court, once presented with Petitioner's claim, to determine whether in regard to the facts and circumstances concerning Petitioner, the Air Force has followed the applicable regulations and statutes. *Spencer v. Laird*, 442 F.2d 904, 906 (2nd Cir. 1971) and cases cited therein.

It is Petitioner's position that the Air Force has failed to follow its own regulations and consequently has prejudiced and violated Petitioner's procedural rights. This scope of judicial review in the District Court is appropriate on a jurisdictional basis.

The relevant Air Force regulation for the purpose of this Court's review concerning the procedural processing of conscientious objector applications is Dept. of the Air Force, 32 C.F.R. § 888e.32 (1976) which states:

§ 888e.32 Status of applicant whose request is under consideration.

To the extent practicable under the circumstances during the period applications are being processed and until a decision is made by the Secretary of the Air Force or HQ USAF, every effort will be made to assign applicants to duties within the command to which they are assigned which will conflict as little as possible with their asserted beliefs. The applicant will be required to comply with active duty or transfer orders in effect at the time of his application or subsequently issued and received. During the period applications are being processed, applicants will be expected to conform to the normal requirements of military service and to perform satisfactorily such duties to which they are assigned. Applicants may be disciplined for violations of the Uniform Code of Military Justice while awaiting action on their applications.

From the chronology outlined previously it is clear that Dr. Jacobs was issued orders on May 17, 1977 with an active duty date of July 18, 1977. Dr. Jacobs earlier attempt at written resignation of April 24, 1977 made no reference to claims of conscientious objection. By letter dated July 1, 1977 Petitioner requested an extension of his active duty reporting date. This request for extension made no reference to conscientious objector claims. By letter dated July 11, 1977 the Petitioner was issued revised orders with an active duty date of August 15, 1977. On July 13, 1977 Petitioner contacted the Air Force by mailgrams stating he wished to apply for discharge as a conscientious objector and requesting appropriate forms. There is some question whether these mailgrams were sent to the appropriate Air Force designations. Petitioner was mailed application forms for conscientious objector status on August 17, 1977, two days after his active duty date had passed and Petitioner had failed to report. Petitions received the forms on August 22, 1977 and filed his application for conscientious objector discharge with the Air Force on August 30, 1977, two weeks after his active duty date.

It is the finding of this Court that 32 C.F.R. § 888e.32 (1976) is clearly and directly applicable. The regulation states precisely that "The applicant will be required to comply with active duty or transfer orders in effect at the time of this application or subsequently issued and received." There is no question that Petitioner did not officially file his application for conscientious objector status until after his active duty reporting date. The Court emphasizes that this is not a case where an application

by a member of the military reserve is filed prior to the issuance of active duty orders, or filed after the issuance of active duty orders but prior to the actual active duty reporting date. It is undisputed that Petitioner's application for conscientious objector status was filed after the active duty date of August 15, 1977. It is the position of the Air Force that Petitioner must comply with 32 C.F.R. § 888e.32 as to the appropriate forum and military procedure for pursuing discharge as a conscientious objector by a serviceman on active duty. This Court is in agreement and finds that the Air Force has followed the applicable regulation.

■ It is the position of Petitioner that the mailgram of July 13, 1977 put the Air Force on notice that Petitioner was a conscientious objector and consequently orders forcing Petitioner to report for active duty, even though issued prior to July 13, 1977, were illegal. Petitioner places great reliance on *Quaid v. United States*, 386 F.2d 25 (10th Cir. 1967) for the contention that the mailgrams of July 13, 1977 though not sufficient as a formal claim of conscientious objection were sufficient to put the Air Force on notice that Petitioner sought conscientious objector status. This Court finds the *Quaid* case completely distinguishable. First, the *Quaid* case involved the violation of substantial rights in a conviction for refusal to submit to induction in a situation where the claim for conscientious objector status was not processed prior to prosecution. In addition the notice of the claim of conscientious objection was not a request for application forms but a filed application "complete except as to signature." *Quaid, supra* at 27. Furthermore, in *Quaid* the complete formal application was filed only two days after the induction notice was issued. The *Quaid* procedural analogy then would be much closer to a chronology where an application for conscientious objection is filed in the interim period between the issuance of orders and the scheduled reporting date rather than the chronology in this case of an application filed after the active duty date. The same chronological distinction may be made in distinguishing *United*

*States v. Gearey*, 368 F.2d 144 (2nd Cir. 1966), *on remand* 266 F.Supp. 161 (1967), *aff'd*, 379 F.2d 915 (2nd Cir. 1967), *cert. denied*, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967). A chronological distinction as to filing date may also be made with *Arlen v. Laird*, 451 F.2d 684 (2nd Cir. 1971) where the Court comments "The practical circumstances of the serviceman on active duty and the unattached reservist are sufficiently different to warrant different results in deciding the question of jurisdiction." *Arlen, supra* at 686. *See also Gordon v. Resor*, 323 F.Supp. 268 (S.D.N.Y. 1970) distinguished in a like chronological manner. The Court also notes that *Gordon v. Resor* is further distinguished by the subsequent rulings under a change in the applicable Army regulation in *Earls v. Resor*, 451 F.2d 1126 (2nd Cir. 1972); *Spencer v. Laird*, 442 F.2d 904 (2nd Cir. 1971).

Petitioner's reliance on *Lurie v. United States*, 402 F.2d 297 (5th Cir. 1968) is also misconstrued in that *Lurie* stands for the proposition that a processing of a conscientious objector application must take place prior to prosecution for failure to submit to induction. In this case the Air Force has not refused to process Petitioner's application for conscientious objection but in accordance with Air Force regulations is processing said application as filed by a member of the active military rather than as filed by a reservist.

Petitioner has a fully adequate opportunity to obtain an appropriate inservice determination and full and fair consideration of his claim. *See Ehlert v. United States*, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); *Spencer v. Laird*, 442 F.2d 904 (2nd Cir. 1971); *Earls v. Resor*, 451 F.2d 1126 (2nd Cir. 1971); *Schultz v. Clifford*, 417 F.2d 775 (8th Cir. 1969), *cert. denied* 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420 (1970). Petitioner by affidavit calls to the Court's attention that certain relief similar to that sought by Petitioner was granted in *LaFranchi v. Seamans*, 536 F.2d 1259 (9th Cir. 1976) and *Goldstein v. Middendorf*, 535 F.2d 1339 (1st Cir. 1976). Both cases are distinguishable from the question now be-

**574**

fore this Court. In *Goldstein* the application for conscientious objection had been filed more than two months before the receipt of active duty orders, and six months prior to the date of active duty. In *LaFranchi* the resignation application for C.O. status was filed less than a month after the first issuance of active duty orders and more than three months before the active duty date. In addition in *LaFranchi* the formal notice of initiating proceedings to obtain a C.O. discharge in the chronological time frame was correctly tendered to the Air Reserve Personnel Center in Denver, Colorado. Most importantly both *Goldstein* and *LaFranchi* concern appeals from a Navy and Air Force determination respectively that the C.O. applicants did not qualify for C.O. discharges, a distinctly different situation from that of Petitioner whose C.O. application is still in the process of resolution by the Air Force and is not before this Court as to the standards applied by the active military in the evaluation of the validity of conscientious objector claims.

In this case Petitioner, as well as the Air Force, is bound by the requirements of the governing regulations. *Earls v. Resor*, 451 F.2d 1126 (2nd Cir. 1972). The Court finds that Petitioner was apprehended and transported to Dyess Air Force Base in compliance with Air Force Regulation 32 C.F.R. § 889.11. The Court further finds that the Air Force is processing Petitioner's claim for conscientious objection in proper compliance with Air Force Regulation 35–24 ¶ 15 (32 C.F.R. § 888e.32).

Consequently Petitioner's request for a preliminary injunction restraining Respondent from ordering Petitioner to perform active duty service, pending determination of conscientious objector status, is denied. Petitioner's motion for a transfer of the processing of the conscientious objector application to another Air Force Base is denied. Petitioner's writ of habeas corpus is denied.

■ In compliance with Air Force Regulation 35–24 ¶ 15 (32 C.F.R. § 888e.32) the Court notes that Petitioner is subject to discipline "for violations of the Uniform Code of Military Justice while awaiting action . . . ." on his application for conscientious objection. However the oral stay granted by this Court is extended to the extent that Respondent is enjoined from prosecuting any court-martial proceedings against Petitioner for failure to comply with active orders pending the resolution of his application for discharge as a conscientious objector.

It is so ORDERED.